**Samuel D. VANOVER, an individual, Plaintiff,**

v.

**Hazel O'LEARY, Secretary of the Department of Energy, Defendant.**

No. 95–CV–916–K.

United States District Court, N.D. Oklahoma.

June 17, 1997.

Steven M. Angel, Law Offices of Steven M. Angel, Oklahoma City, OK, for Plaintiff.

WynDee Ann Baker, United States Attorney, Tulsa, OK, for Defendant.

## JUDGMENT

KERN, Chief Judge.

This matter came before the Court for consideration of the Defendant Hazel O'Leary's Motion for Summary Judgment pursuant to *Fed. R. Civ.* P. 56. The issues having been duly considered and a decision having been rendered in accordance with the Order filed on June 17, 1997, the Court finds summary judgment is appropriate in favor of Defendant Hazel O'Leary.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby entered for Hazel O'Leary and against the Plaintiff.

## ORDER

Now before the Court is Defendant's Motion for Summary Judgment. Plaintiff has brought this cause of action alleging that he was not promoted in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, 42 U.S.C. § 1981A, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Additionally, Plaintiff claims that he was ultimately violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

### I. *Statement of Facts*

Plaintiff first began his employment with Southwestern Power Administration ("SWPA"), at it's Gore office, in December, 1968. The SWPA is an agency of the federal Department of Energy, which markets federally generated hydroelectric power in six states: Kansas, Missouri, Arkansas, Texas, Oklahoma, and Louisiana. The headquarters of the SWPA is located in Tulsa, Oklahoma,

with area offices located in Springfield, Missouri, Gore, Oklahoma; and Jonesboro, Arkansas. The facts and occurrences constituting this cause of action arose from the SWPA location in Gore, Oklahoma.

The office manager and EEO officer in the Gore office at the relevant times was Aleta Wallace. Wallace was supervised by Thomas Green, *Deposition of Aleta Wallace, Plaintiff's Exhibit 10, p. 10,* and Dallas Cooper served as the superior of both Green and Wallace. *Id. at 11; Deposition of Thomas Green, Plaintiff's Exhibit 4, p. 16.* Thomas Green was personal friends with both Dallas Cooper and Aleta Wallace. *Deposition of Thomas Green, Plaintiff's Exhibit 4, p. 16; Deposition of Aleta Wallace, Plaintiff's Exhibit 10, p. 10.*

### A. Facts Relevant to Plaintiff's Retaliation Claims

In 1985, Plaintiff was denied a promotion to a position as general foreman at the SWPA's Gore facility, and was subsequently dismissed from his employment as a lineman at SWPA allegedly on the grounds that he had incurred disabilities which would prohibit him from performing his job as a lineman, and because there were no positions available to accommodate his limitations. EEOC *Report, Plaintiff's Exhibit 1.* Plaintiff filed a formal EEOC complaint on December 13, 1985. *Id.* Plaintiff was later not selected for a position as foreman one at the Gore facility which became available in 1986. *Id.* The same result occurred when the Plaintiff applied for the same position at the Tupelo, Oklahoma location on March 31, 1986. *Id.* The Plaintiff succeeded in his EEOC complaint, was reinstated, and returned to work at the Gore office in October, 1992 as general foreman. *Id.*

In the early 1990s, the Defendant began considering reorganization of the SWPA field offices. In 1993, at least two reorganization meetings were held with SWPA employees in which the future manager positions were discussed. In the first meeting, Dallas Cooper stated something to the effect of "Sam

doesn't come into this, he's as good as gone," or "the same as gone". *Deposition of Donna Hause, Plaintiff's Exhibit 6, p. 15.* This statement was made in reference to the position of team leader, which was the position into which the current general foremen were anticipated to transfer. *Deposition of Donna Hause, Defendant's Reply, Exhibit 7, p. 12–15.*

In 1993, Plaintiff alleges that he was contacted by Shirley Nichols, a woman who had sought employment by SWPA. *Deposition of Samuel Vanover, Plaintiff's Exhibit 9, p. 17.* According to the Plaintiff, Ms. Nichols was interested in bringing sexual harassment charges against Dallas Cooper. On or about September 15, 1993, Plaintiff informed Thomas Green of his intent to help Ms. Nichols pursue her claim, and Mr. Green told Dallas Cooper about this conversation. *Deposition of Dallas Cooper, Plaintiff's Exhibit 3, p. 47–52.* Dallas Cooper admitted that he referred to Plaintiff as a "copperhead snake" to Ms. Nichols. *Id at 49.* Cooper also testified that he told his supervisor, J.M. Schaffer and Tom Green that he thought that the Plaintiff was encouraging or involved in encouraging Shirley Nichols to file sexual harassment charges against Cooper.[1] *Id.* at 55–56.

In June, 1992, a woman named Veronica McGuire began employment with the SWPA in the Gore office working part-time as a "Stay in School" employee. Ms. McGuire, during part of the time she was employed at SWPA, was involved in an affair with a lineman at SWPA, John Farrell. *Deposition of Veronica DaNeile Anderson (aka Veronica McGuire), Plaintiff's Exhibit 7, p. 30.* Plaintiff had, at some point during 1993, disciplined Mr. Farrell, and Mr. Farrell and Plaintiff did not get along well. *Id. at 60; Deposition of Gary Gregory, Plaintiff's Exhibit 5, p. 30, 37.* Mr. Farrell was the first to report an alleged incident of sexual harassment between Plaintiff and Ms. McGuire to Ms. Wallace. *Id.; Deposition of Aleta Wallace, Plaintiff's Exhibit 10, p. 30.* Ms. McGuire resigned her position with SWPA

---

1. A jury returned a verdict in the Defendant's favor on June 7, 1996 in Ms. Nichols' sexual harassment suit. *Defendant's Reply, Exhibit 6.*

on August 31, 1993, and filed a formal complaint of sexual harassment against the Plaintiff on November 8, 1993, alleging that she had been harassed by the Plaintiff from September of 1992 through August of 1993. *Defendant's Exhibit 2(B)*. As a result of Ms. McGuire's complaint, an EEOC investigation was initiated. The United States Department of Energy and SWPA, at the relevant time, had in place policies prohibiting sexual harassment in the workplace. *Defendant's Exhibit 2(C)*.

On June 13, 1994, pursuant to the above-mentioned reorganization efforts, SWPA advertised vacancies for three positions, described as "Transmission System Maintenance Manager", to be filled at each of three locations: Gore, Oklahoma; Springfield, Missouri; and Jonesboro, Arkansas. The closing date for this vacancy was July 5, 1994. *Defendant's Exhibit 1(A)*. Applicants from within the federal government were targeted in this advertisement. *Id*. Another advertisement was issued on June 27, 1994 for these same positions, but this advertisement was not limited to those with federal government experience. *Defendant's Exhibit 1(B)*. The decision to seek applicants outside of federal government was made by Dallas Cooper. *Deposition of Margaret Skidmore, Plaintiff's Exhibit 8, p. 28*. The Plaintiff applied for the positions open at Gore and Springfield.

Margaret Skidmore was in charge of referring the applicants qualified for the advertised positions to the selecting official, Thomas Green. Mr. Green was chosen as selecting official by Dallas Cooper. *Deposition of Thomas Green, Plaintiff's Exhibit 4, p. 15–16*. Thomas Green was aware, at the time he was appointed as selecting official, that Plaintiff was returned to SWPA pursuant to an EEOC order of reinstatement, and was generally aware of a rumor that management was resistant to Plaintiff's return. *Deposition of Thomas Green, Plaintiff's Exhibit 4, p. 14–15*.

All individuals within the agency who previously occupied the general foreman positions, including Plaintiff, were considered best qualified and were automatically referred to Mr. Green without having to submit to the qualification process. *Id*. at 38. Eventually, the list of applicants referred to Thomas Green contained 23 names, which were then referred to an interview panel composed of Bob Inman, Otis Keller, Joe Malinovsky, and Thomas Green. Thomas Green served as chairman of the interview panel.

Interviews for the transmission system maintenance manager positions were conducted by Thomas Green and the interview panel on September 12, 13, 14, and 19, 1994, and each interviewee was asked the same 20 questions, and was independently ranked by each panel member. *Defendant's Exhibits 1(E),(F), and (G)*. The Plaintiff was given an overall ranking of 16 of 23 by panel member Bob Inman; a ranking of 9 of 23 by Thomas Green; a ranking of 21 of 23 by Otis Keller, and a ranking of 9 of 23 by Joe Malinovsky. *Defendant's Exhibit 1(F), p. 54*. Each of the panel members indicated that neither age, nor prior EEO activity affected their ranking decisions. *Defendant's Exhibits 1(G), (I), (J), and (K)*. These rankings were then submitted to Thomas Green as the selecting official, and he converted the rankings into percentages, and formulated overall rankings based on those percentages, *Defendant's Exhibits 1(F), p. 55, and 1(G)*. Mr. Green then evaluated the rankings in conjunction with telephonic reference checks, work experience, and knowledge, skills, and abilities. *Defendant's Exhibit 1(G)*. Dallas Cooper did not receive the applications at any time during the selection process. *Deposition of Dallas Cooper, Plaintiff's Exhibit 3, p. 6*.

After determining his proposed selections pursuant to the procedure described above, Thomas Green submitted them to Dallas Cooper, the approving official. *Id*. According to Cooper's deposition testimony, Plaintiff's name never came up during this discussion because Mr. Green had already determined who the best candidates were, and the Plaintiff was not among those presented to Mr. Cooper for approval. *Deposition of Dallas Cooper, Plaintiff's Exhibit 3, p. 9–11; Defendant's Exhibits 1(G),(M)*. Upon receiving Cooper's approval for his preferred candidates, Mr. Green selected Jerry Murr for the

position in Gore, Steven Ray for the position in Springfield, and Tony Weir for the position in Jonesboro. Mr. Murr achieved an overall ranking of 2 of 23, Mr. Ray was ranked 3 of 23, and Mr. Weir was ranked 8 of 23. *Defendant's Exhibit 1(F), p. 55.* Plaintiff received an overall rank of 16 of 23, and was notified of his non-selection on or about October 14, 1994.

Plaintiff's position, general foreman, was dissolved pursuant to the reorganization plan, and Plaintiff was subsequently reassigned to a position as maintenance coordinator at the Gore facility on October 30, 1994 by Colin Kelley, SWPA Personnel Officer. *Defendant's Exhibit 2(A).* Plaintiff filed an EEOC complaint regarding his non-selection on December 20, 1994.

On July 24, 1995, a Final Agency Decision regarding Ms. McGuire's sexual harassment claim was issued, finding that Ms. McGuire was the victim of sexual harassment. *Defendant's Exhibit 2(D)(3).* On August 24, 1995, Thomas Green was appointed proposing official by Forrest E. Reeves, Acting Administrator of the Department of Energy, and was ordered to conduct an independent review of the agency decision. *Defendant's Exhibit 2(F).* Mr. Reeves also selected Mr. Francis R. Gajan as the Deciding Official in the event that Mr. Green's investigation concluded that discipline should be imposed. *Id.* On October 30, 1995, one year after Plaintiff's reassignment to a maintenance coordinator position, and one month after Plaintiff filed this lawsuit, Thomas Green notified Plaintiff that he had completed his independent review of the agency decision regarding his alleged sexual harassment of Veronica McGuire, and that he was going to propose that Plaintiff be removed from his position as maintenance coordinator with SWPA within 30 days. *Defendant's Exhibit 2(D)(30).* After a third review of the relevant documentation, Francis Gajan notified Plaintiff that he was officially removed on February 1, 1996 for violating company policy and Title VII regarding sexual harassment. *Defendant's Exhibit 2(G).*

### B. Facts Relevant to Plaintiff's Age Discrimination Claim

During a meeting held in 1993 regarding the reorganization of the SWPA offices, the Plaintiff has testified that Dallas Cooper stated to those assembled that "he was going to weed out" the older employees. *Deposition of Samuel Vanover, Plaintiff's Exhibit 9, p. 15.* Plaintiff also contends that Dallas Cooper later made a similar statement to the Plaintiff privately. *Id.*

Additionally, the three candidates who were selected for the positions of Transmission System Maintenance Manager in 1994 were all younger than the Plaintiff. At the time of the selection, Jerry Murr, who was hired for the position in Gore, was 41. Steven Ray, who was selected for the position in Springfield, was 40. Tony Weir, who was selected for the position in Jonesboro, was 53. Plaintiff was 54 at the relevant time.

### II. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). Where the nonmoving party will bear the burden of proof at trial, that party must "go beyond the pleadings" and identify specific facts which demonstrate the existence of an issue to be tried by the jury. *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Additionally, although the non-moving party need not produce evidence at the summary judgment stage in a form that is admissible at trial, the content or substance of such evidence must be admissible. *Thomas v. Internat'l Business Machines,* 48 F.3d 478, 485 (10th Cir. 1995).

### III. Discussion

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* prohibits an employer from discharging, failing to promote, or otherwise discriminating

against any individual because that individual opposed an employer's unlawful employment practice, or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII.

To establish a *prima facie* claim of retaliation, the Plaintiff must show that he engaged in protected activity, that he was subsequently subjected to an adverse employment action, and that there was a causal link between the protected activity and the adverse action. *Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1381 (10th Cir.1994). Once a plaintiff has established a *prima facie case,* the defendant must articulate a legitimate, non-discriminatory reason for the adverse action taken against the plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). This burden is merely one of production, rather than persuasion. The burden then shifts back to the Plaintiff to show that the Defendant's stated reasons were merely a pretext for retaliation.

Similarly to Title VII, the ADEA prohibits employers from failing to promote an individual because of that individual's age. 29 U.S.C. § 623(a)(1). The protective provisions of the ADEA are limited to individuals who are at least 40 years of age. 29 U.S.C. § 63 1(a). To establish a claim for relief under the ADEA, the Plaintiff must prove that age was a determining factor in the employer's failure to promote him. *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996). Although the Plaintiff is not required to show that age was the sole reason for the employer's adverse action, he must show that age made the difference in the employer's decision. *Id.* A plaintiff may meet this burden either through presenting direct or circumstantial evidence of age discrimination, or he may rely on the proof scheme for a *prima facie* case established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). *Id.* at 557-58. In this case, the Plaintiff has chosen to pursue both approaches.

To establish a *prima facie* case under the ADEA, the Plaintiff must prove that (1) he was within the protected age group; (2) he was qualified for a promotion; (3) he was not promoted despite his qualification for the position; and (4) a younger person was promoted. *Greene,* 98 F.3d at 558. Once the Plaintiff establishes a prima facie case, there is a presumption that the employer unlawfully discriminated against the employee. *Id.* The burden then shifts to the employer to produce evidence that the adverse employment action took place for a legitimate non-discriminatory reason. *Id.*

For purposes of this motion, the Defendant has conceded that the Plaintiff has established a *prima facie* case with regard to both his age discrimination and retaliation claims.

### A. Plaintiff's Non–Selection to the Transmission System Maintenance Manager Position

■ Plaintiff has offered, as direct proof of discrimination, the statements of Dallas Cooper that he intended to use the reorganization to "weed out" the older employees. As for the *McDonnell Douglas/Burdine* analysis, the Defendant contends that the Plaintiff was not selected to be the transmission system maintenance manager either in Gore or Springfield because other, more highly qualified candidates were selected. The Court finds that the Defendant has met its burden of production with regard to both the age and retaliation claims under the *McDonnell Douglas/Burdine* analysis. Thus, the presumption of discrimination drops from the case, and the Plaintiff bears the burden of providing sufficient evidence that the Defendant's stated reasons are pretextual.

■ As proof of pretext in his retaliation and age claims, Plaintiff makes a number of assertions. First, he contends that the selection process for the transmission system maintenance manager positions were "manipulated" by Dallas Cooper in that Cooper, in "an unusual step", advertised the positions on a nationwide basis to avoid having the Plaintiff be the only qualified applicant. The

Plaintiff fails to present any evidence that this was an unusual step, and Margaret Skidmore testified that the decision to advertise nationwide was made to ensure that the SWPA would receive candidates from every source, and thus the best applicants for these "very critical positions", "critical to SWPA's mission". *Deposition of Margaret Skidmore, Plaintiff's Exhibit 8, p. 28.* Additionally, Skidmore testified that the agency is not required to show that there were insufficient candidates within the government before seeking candidates outside the government. *Id.*

Second, Plaintiff alleges that the interview panel used in the selection of the transmission system maintenance managers was "an elaborate ruse" because (1) Cooper had announced to the employees that Plaintiff was "as good as gone"; (2) Cooper announced that he was going to use the reorganization to "weed out" older employees, including Plaintiff; (3) at the time the selection was made, Cooper was angry at Plaintiff because of his involvement in the Shirley Nichols' case; (4) Thomas Green did not rely on the interview panel rankings, but rather made his selection only after "touching base" with Dallas Cooper; (5) Otis Keller, a member of the interview panel, was named as a discriminating official in Plaintiff's 1985 complaint, and was present at a management meeting where resistance to Plaintiff's return as general foreman was discussed; and (6) Thomas Green had "repeatedly acted out his animosity toward Plaintiff on behalf of Cooper".

There are numerous problems with Plaintiff's arguments. First, although Cooper stated that Plaintiff was as "good as gone", this statement was made in April 1993, which was five months prior to the interview process. Second, Dallas Cooper did not make any decisions regarding the selection process. He did not see the applications, and his only role in the selection process was to approve the proposed selections made by Thomas Green, none of which included the Plaintiff. Thus, the fact that Cooper was angry with the Plaintiff, and that he made the statement that the reorganization was going to be used to "weed out" older employees is insufficient to create an issue of fact because Dallas Cooper was not the decision-maker.

To raise an inference of discrimination, age-related, or retaliatory comments must have been made by the decision-maker, and must have some nexus to plaintiff, his position, or the employment decision. *Edwards v. Liberty National Bank & Trust Company of Oklahoma City,* 89 F.3d 849, 1996 WL 353784, \*\*2 (10th Cir.) *citing Cone v. Longmont United Hospital Association,* 14 F.3d 526, 531 (10th Cir.1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.").

The third problem with Plaintiff's argument is that, although Plaintiff contends otherwise, Plaintiff has provided no evidence that Green did not rely on the interview panel rankings in making his selection decisions.[2] Fourth, Plaintiff's assertion that Otis Keller was present at the meetings discussing management's resistance to Plaintiff's return is not supported by any evidence on the record.[3] Fifth, Plaintiff has provided absolutely no evidence whatsoever regarding Thomas Green "acting out his animosity toward Plaintiff on behalf of Cooper."

Additionally, Plaintiff's response brief contends that he was the "best qualified" for the position of transmission system maintenance coordinator. As with most of Plaintiff's assertions, there is no evidence to support this. Plaintiff submits that Gary Gregory testified that, in his opinion, the Plaintiff was the most qualified, but Plaintiff failed to submit this alleged testimony to the Court.

Because the Plaintiff has failed to present any evidence of pretext or discriminatory or

---

2. Although Plaintiff refers to page 74 of Green's deposition, no such page was included among Plaintiff's exhibits. The Court has determined, based on the evidence presented, that Green did not rely *solely* on the panel's rankings in making his selection decision; however, he did consider the rankings in formulating an overall ranking, which was a crucial element in the decision-making process.

3. Once again, Plaintiff refers to Otis Keller's deposition, page 25, but no such deposition was included in Plaintiff's exhibits.

retaliatory motive attributable to the decision-maker in this case, Thomas Green, Defendant's motion for summary judgment must be granted as to the Plaintiff's retaliation claims.[4]

### B. Plaintiff's Discriminatory Discharge Claims

 The SWPA asserts that the Plaintiff was terminated from his position because he sexually harassed Veronica McGuire, a SWPA employee. The Court finds that the Defendant has met its burden of producing a legitimate, non-retaliatory reason for Plaintiff's discharge, thus the presumption of discrimination is rebutted and drops from the case. To survive summary judgment, the Plaintiff must put forth sufficient evidence to create a factual question as to whether the reasons stated by the Defendant were pretextual.

According to the record, Veronica McGuire filed a formal EEOC complaint in November, 1993 asserting that she had been sexually harassed from September, 1992 through August, 1993. According to McGuire's complaint, she alleged that in November, 1992, the Plaintiff reached up from behind her and grabbed her breasts. On another occasion, McGuire alleged that the Plaintiff had a polish sausage hanging out of his zipper. Ms. McGuire also alleged that the Plaintiff gave her a t-shirt that said "Your hole is our goal". Ms. McGuire alleged that other, lesser incidents of harassment occurred throughout her tenure at SWPA.

Plaintiff's first evidence of pretext is that there was no evidence that he sexually harassed Veronica McGuire. However, Aleta Wallace confirmed the polish sausage incident, and several employees, including Plaintiff, confirmed that Plaintiff distributed the t-shirt with the "Your hole is our goal" message to several female employees. There were no witnesses to the breast-grabbing

incident, but several female employees either experienced or witnessed the Plaintiff pinching the buttocks of female employees. Although the Plaintiff denied the allegations of harassment in an affidavit submitted to the EEOC investigator, there is evidence on the record that he first stated "no comment" when questioned by the EEOC investigator about each of these incidents.

Additionally, in support of his claim that his termination was pretextual, the Plaintiff claims that sexual harassment was tolerated by the SWPA, and that he was singled out for discipline. In support of this assertion, Plaintiff indicates that a sign was posted on the Gore office wall stating that sexual harassment wasn't a problem, but a "benefit" of working there. This was confirmed by evidence on the record. Plaintiff also indicated that he and several other male employees complained about sexual harassment, but nothing was done; however, Plaintiff failed to submit any evidence of this allegation[5] Plaintiff also contends that the SWPA didn't fire Dallas Cooper when he was charged with sexual harassment; however, a jury found in the Defendant's favor in the Dallas Cooper case. Finally, the Plaintiff points to evidence in the record indicating that the atmosphere at the SWPA office in Gore was "open" and that off-color jokes were regularly told.

While the foregoing paragraph contains ample evidence that the SWPA ran a rather loose organization, the record reflects that Ms. McGuire is the only one who complained, and that she found Plaintiff's actions to be unwelcome. Additionally, whether other employees tolerated such activities is irrelevant to the issue of whether Ms. McGuire was sexually harassed. Plaintiff has not presented any evidence that other employees, against whom harassment complaints were proven, were treated better than he.

In further support of his claim that his

---

4. The Court rejects Plaintiff's conspiracy theory, of which there is no evidence, which attempts to attribute Dallas Cooper's retaliatory or discriminatory motives to Thomas Green as a result of Thomas Green's relationship with Dallas Cooper and Aleta Wallace. This is discussed more fully

in the subsequent section of this order addressing Plaintiff's discharge claims.

5. This allegation is allegedly supported by deposition testimony which was not submitted to the Court.

discharge was motivated by retaliation,[6] the Plaintiff has propounded an elaborate conspiracy theory. First, Plaintiff contends that John Farrell, a subordinate employee, wanted to "use" Veronica McGuire to "get" Plaintiff because the Plaintiff had counseled Farrell about his affair with Ms. McGuire. Plaintiff has offered the deposition testimony of Gary Gregory in support of his claim that Farrell "manufactured" the incidents leading to the sexual harassment charges, and convinced McGuire to report Plaintiff. However, Plaintiff's purported "evidence", as produced through the Gregory deposition is inadmissible hearsay. The one piece of admissible evidence in support of this conspiracy is the fact that Farrell is the individual who first reported, sometime in the Fall of 1992, to Aleta Wallace that Plaintiff had grabbed McGuire's breasts. Additionally, Plaintiff points out that Ms. McGuire subsequently complained to Wallace about the incident shortly thereafter, but that she chose not to file a formal complaint until a year later—November, 1993. According to the Plaintiff, the timing of this formal complaint is the key to his retaliation complaint because it was in September, 1993, just two months earlier, that Dallas Cooper discovered that the Plaintiff was assisting Shirley Nichols, a former SWPA job applicant, in her sexual harassment complaint against Dallas Cooper. According to the Plaintiff, it was after this discovery that the attempts to get rid of him "kicked into overdrive". Plaintiff contends that after Dallas Cooper found out about Plaintiff's involvement in the Nichols' case, McGuire was "encouraged" by the "Cooper, Green and Wallace cabal" to pursue her harassment complaint. There is no direct evidence of this conspiracy, but Plaintiff contends that there is ample circumstantial evidence. Plaintiff contends that, at the time the sexual harassment complaint was lodged against him, and throughout the investigation, Dallas Cooper was angry with Plaintiff because of his involvement with Nichols, and called Plaintiff a "copper-

head snake". Further, Plaintiff has presented evidence that Dallas Cooper was good friends with Thomas Green, and Thomas Green was good friends with Aleta Wallace. Plaintiff's theory is as follows: John Farrell, motivated by his dislike for the Plaintiff, concocted a plan to use McGuire to "get" the Plaintiff. Farrell contrived the November, 1992 incident involving the Plaintiff "grabbing" McGuire's breasts, and encouraged Veronica McGuire to complain to Aleta Wallace, and to pursue the charges.[7] Plaintiff maintains that John Farrell then applied pressure on Thomas Green to investigate the charges. Dallas Cooper, angry over Plaintiff's involvement in the Nichols' case, confided in his good friend Thomas Green that Plaintiff was behind Nichols' EEOC charges. According to the Plaintiff's theory, because Aleta Wallace was friends with McGuire, and good friends with Thomas Green, she lied to EEOC investigators, and corroborated the "polish sausage" incident to help Thomas Green assist his friend Dallas Cooper discriminate against Plaintiff. However, the only admissible evidence on the record suggests that Ms. McGuire was motivated to file her formal complaint against Plaintiff because she had discovered that Plaintiff was helping another woman file harassment charges against Dallas Cooper. McGuire testified that she thought that Plaintiff's actions were hypocritical, and that his hypocrisy motivated her to ask Wallace if it were too late to file charges against Plaintiff. *Deposition of Veronica Anderson, Plaintiff's Exhibit 7, p. 59.*

Plaintiff advances many other allegations in support of his conspiracy theory including that the Defendant clearly did not credit McGuire, and that there was substantial evidence that the Plaintiff had not sexually harassed McGuire; however, Plaintiff again has failed to support these contentions with any admissible evidence. Most of Plaintiff's evidence relating to retaliatory motive come from either John Farrell or Dallas Cooper,

---

6. The Court has been informed that the age discrimination issue was not brought before the Merit Systems Protection Board, therefore the discharge section of this order will address only Plaintiff's retaliation claims.

7. This segment of Plaintiff's conspiracy theory is not supported by any admissible evidence and is merely Plaintiff's assertions presented in his response brief.

neither of which were involved in the decision to terminate the Plaintiff. Thomas Green, pursuant to an appointment and after receiving an agency decision finding that the Plaintiff had sexually harassed Ms. McGuire, conducted his own investigation and determined that the Plaintiff should be terminated. The final decision rested with Francis Gajan. Additionally, although the Plaintiff contends that the EEOC and agency investigations were "tightly controlled", the Plaintiff has failed to present any evidence in support of this contention. Specifically, the Plaintiff asserts on page 12 of his response brief, that Veronica McGuire had Gary Gregory's remarks regarding the atmosphere at SWPA "excluded" from his affidavit. There is no evidence supporting this statement whatsoever. Further, on that same page Plaintiff contends that the investigation did not address the fact that McGuire and Farrell had a relationship, or that Farrell was the source of the original charges. This assertion is clearly without basis. The record of the EEOC investigation clearly indicates that the McGuire–Farrell relationship was thoroughly revealed and discussed. *See Defendant's Exhibits 2(D)(3), p. 7 & 2(D)(4).* Additionally, the administrative record is replete with references to the fact that John Farrell initially complained about the harassment to Wallace. *See Defendant's Exhibits 2(D)(4) (Affidavit of Veronica McGuire), 2(D)(5) (Affidavit of Aleta Wallace), 2(D)(12)(Affidavit of John Farrell), p. 13.* Further, Plaintiff was given an opportunity at the investigatory stage to present his conspiracy theory. The entire EEO investigatory file was considered by Thomas Green when he conducted his second "independent" investigation, thus it seems incredible for the Plaintiff to now assert that such things were not taken into consideration simply because these items weren't discussed in the final agency decision or in Thomas Green's proposal memorandum.

The Plaintiff has failed to present any admissible evidence either that the Defendant's stated reason for Plaintiff's termination is unworthy of belief, or in support of his allegations that the Defendant terminated his employment out of retaliation. For this reason, the Defendant's motion for summary judgment must be granted as to Plaintiff's retaliatory discharge claim.

### C. Plaintiff's Civil Service Claim

In February, 1996, Plaintiff was notified by Francis Gajan that his employment with the Department of Energy was terminated. Pursuant to 5 U.S.C. § 7513, a federal agency may only terminate an employee for such cause as will promote the efficiency of the service. Plaintiff appealed his termination to the Merit System Protection Board ("MSPB") pursuant to 5 U.S.C. § 7702 asserting that his termination was not for such cause as would promote the efficiency of the service. Additionally, Plaintiff claimed that he was terminated in retaliation for participating in EEOC activities. Although the MSPB held a hearing on Plaintiff's claim, they failed to issue an opinion within 120 days as required by statute. 5 U.S.C. § 7702(a)(1). Plaintiff seeks judicial review in this court of his termination by the Department of Energy.

Ordinarily, when an individual employed by a federal agency is terminated, if he does not assert a discrimination claim against the terminating agency, an appeal is taken to the MSPB pursuant to § 7701 of the Civil Service Reform Act. A final decision by the MSPB is then directly appealable to the United States Court of Appeals for the Federal Circuit ("the Federal Circuit") pursuant to § 7703. However, in cases in which a terminated employee asserts a discrimination claim in addition to claiming that his termination was not for the efficiency of the service, the case is termed a "mixed" case, and appeals of an MSPB decision are to be directed to the federal district court. The federal district court has the authority to conduct a *de novo* review of an employee's discrimination claim. As a matter of judicial economy, the federal appellate courts have determined that concurrent with a district court's authority to conduct *de novo* review of a federal employee's discrimination claim, the district court should also act as an appellate court, and conduct a review of the MSPB record on the issue of whether the termination was for the efficiency of the service. *See e.g., Williams v. Rice,* 983 F.2d 177, 179–

80 (10th Cir.1993); *Christo v. Merit Systems Protection Bd.,* 667 F.2d 882 (10th Cir.1981).

A federal employee's discrimination claim can arrive in a district court by another method as well. Under § 7702(e)(1)(B), if the MSPB fails to issue a decision on a federal employee's "mixed" claim within 120 days as required by § 7702(a)(1), an aggrieved employee is entitled to file a complaint with a district court notwithstanding the lack of a final MSPB decision. That is what has occurred in this case. In addition to bringing his retaliation claim before this Court, the Plaintiff also requests that the Court review the Department of Energy's termination decision to determine whether or not the Plaintiff was terminated "for the efficiency of the service." The parties contend that this Court has the jurisdiction to review the termination decision of the Department of Energy, pursuant to the judicially created "concurrent" authority discussed in the preceding paragraph. Plaintiff asserts that the Court must conduct a *de novo* review of his termination, whereas Defendant contends that the Court should review the administrative record that was before the MSPB. The Court finds that neither of these options are consistent with its interpretation of the statute.

Although § 7702(e)(1)(B) entitles an aggrieved employee to file a complaint with the district court where the MSPB fails to issue a decision within 120 days, the Court finds that, under those circumstances, the district court is not empowered with the same concurrent jurisdiction to review the termination decision as in the case when the MSPB has issued a final opinion in a "mixed" case. The concurrent jurisdiction to review MSPB termination decisions was created by the federal courts to promote judicial efficiency. Rather than having the district courts conduct *de novo* review of the discrimination issue and having the Federal Circuit review the MSPB agency record of the just cause termination decision, when the MSPB has issued a decision in a mixed case, it is more efficient to have the district court review the entire claim. When a district court undertakes this review, it merely stands in the shoes, so to speak, of the Federal Circuit. The Federal Circuit, pursuant to § 7703, has the authority to review only *final* orders or decisions of the MSPB. It follows that the same holds true of district courts reviewing termination decisions pursuant to § 7702. Thus, in cases such as this where the MSPB has not issued a final decision, neither the Federal Circuit, nor the district court would have the expertise to address the issue of whether a federal employee's termination was for the efficiency of the service.

■ This Court finds that when an employee files a discrimination claim with the district court 120 days after filing an appeal with the MSPB pursuant to § 7702(e)(1)(B), the MSPB retains a continuing obligation to issue an opinion as to agency's termination decision, and if such opinion is issued prior to the termination of the district court discrimination case, the district court may review the MSPB ruling. If the MSPB fails to issue a decision prior to the termination of the district court discrimination case, the final decision of the MSPB should be appealed directly to the Federal Circuit as is contemplated by the statute. To hold otherwise would allow terminated employees to circumvent MSPB review altogether simply by asserting discrimination claims, and would result in district courts conducting reviews of agency decisions under the strictures of § 7701, a task for which district courts are ill-suited. *See,* Peter B. Broida, *A Guide to Merit System Protection Board Law & Practice,* Ch. 12, at I(G)(1) (3d ed.1997).

For the foregoing reasons, the Court has determined that Plaintiff's Civil Service Reform Act claim is not properly before this Court, and should be DISMISSED.

### IV. *Conclusion*

Summary judgment is hereby GRANTED on behalf of the Defendant as to Plaintiff's failure to promote and discriminatory discharge claims. Plaintiff's Civil Service Act claim is DISMISSED for failure to exhaust administrative remedies.