Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the
Clerk of any formal errors in order that corrections may be made before the
bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 7, 2007          Decided February 29, 2008

No. 05-5456

KIKI IKOSSI,
APPELLANT

v.

DEPARTMENT OF NAVY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01392)

---

*Michael D. Kohn* argued the cause for appellant.  With him
on the briefs was *David K. Colapinto*.  *Stephen M. Kohn* entered
an appearance.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause
for appellees.  With him on the brief were *Jeffrey A. Taylor*,
U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.
*Michael J. Ryan* and *Wyneva Johnson*, Assistant U.S. Attorneys,
entered appearances.

Before: GINSBURG[*], ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal arises from the termination of Dr. Kiki Ikossi's employment at the Navy Research Lab ("NRL") where she was an electrical engineer. After appealing to the Merit System Protection Board ("MSPB") and filing a complaint with the Equal Employment Opportunity ("EEO") office, Dr. Ikossi sued the Secretary of the Navy and the NRL in the district court, alleging gender, age, and national origin discrimination and unlawful retaliation as well as violations of the Family and Medical Leave Act ("FMLA") and the Civil Service Reform Act ("CSRA"). The district court dismissed her non-discrimination claims for lack of subject matter jurisdiction, dismissed her pre-termination claims as untimely, and granted summary judgment to the Secretary on her discrimination and retaliation claims. We affirm in part and reverse in part. Because Dr. Ikossi did not administratively appeal the dismissal by the EEO office or file a civil action on those claims within ninety days, we affirm the dismissal of the pre-termination claims. However, because 5 U.S.C. § 7702(e)(1) provided subject matter jurisdiction over the entirety of Dr. Ikossi's "mixed case" under the CSRA when the MSPB failed to issue a final decision within 120 days, *id.* § 7702(a)(1), and because summary judgment was premature in view of her request for discovery pursuant to Fed. R. Civ. P. 56(f), we reverse and remand the case to the district court.

**I.**

In view of the controlling legal questions that resolve this

---

[*] Circuit Judge Ginsburg was Chief Judge at the time of oral argument.

appeal, we limit our statement of the evidence to highlight the procedural history.

Dr. Ikossi joined the staff at the NRL in 1998 after having been a tenured professor at Louisiana State University and an NRL summer research fellow for eight years. Her job description called for her to work on research teams as well as conduct independent research, and she was expected to "define, execute and publish the results of a personal research agenda." For much of her employment, Dr. Ikossi was directly supervised by Dr. Harry Dietrich, her second level supervisor was Dr. Dennis Webb, and her third level supervisor was Dr. Gerald Borsuk.

Between 1999 and 2002, Dr. Ikossi received an array of awards from the NRL and consistently good reviews. However, Dr. Ikossi became increasingly concerned that she was not receiving proper credit for her work. For example, she was not assigned to lead a project to which her research had made substantial contributions, and she believed that her contributions had not been properly acknowledged by male colleagues in publications and presentations. Concluding this was a result of gender discrimination, she met in December 2000 with Dr. Webb and contacted the NRL's Human Resources Office ("HRO").

As a result of a reorganization initiated by Dr. Webb in March 2002, Mr. Brad Boos became Dr. Ikossi's immediate supervisor. As part of the reorganization, Dr. Ikossi was to move her office and share space with another full-time scientist, an arrangement she considered inadequate to meet her professional needs and inferior to that provided to her male colleagues, some of whom were permitted to set up private offices in unused laboratory space. On April 23, 2002, Dr. Ikossi complained to Mr. Boos, Dr. Webb, and the HRO that she

was being subjected to a hostile work environment. On September 16, 2002, Mr. Boos issued her a letter of reprimand for yelling at a colleague, a level of discipline that Dr. Webb could not recall having ever been used and one more severe than that used in a case of sexual harassment, where the employee was issued a letter of caution, which does not become part of an employee's personnel record.

On June 3, 2002, Dr. Ikossi filed a formal EEO complaint alleging gender, age, and national origin discrimination. The EEO office accepted the complaint for investigation on July 19, 2002. She amended her complaint on November 17, 2002 and February 6, 2003 to add a retaliation claim and to allege that her supervisors had treated younger males with inferior qualifications substantially better than they treated her. On November 20, 2002, an EEO investigator held a fact-finding conference. By fall 2002, Dr. Ikossi was often on medical leave, and by the end of the year her health had deteriorated to the point she advised that she would not be able to work anytime soon. She took approved leave under the FMLA between December 23, 2002 and February 28, 2003, at which time she began to work part-time. On December 2, 2002, Mr. Boos proposed that she be suspended for 14 days; Dr. Webb converted the proposal into a proposed removal of Dr. Ikossi from federal employment. Dr. Borsuk terminated Dr. Ikossi's employment on April 23, 2003.

On May 20, 2003, Dr. Ikossi filed a mixed-case appeal with the MSPB, contending that the termination of her employment violated Title VII and the Age Discrimination in Employment Act ("ADEA") as well as the CSRA and the FMLA. In a statement of jurisdiction, she noted that she had not included her termination claims in her pending EEO complaint. An administrative judge held a one-day hearing on August 28, 2003. The EEO office dismissed her complaint on September 16, 2003

on the ground that she had been afforded the opportunity to litigate those claims before the MSPB; she was advised that she had the right to appeal to the Equal Employment Opportunity Commission ("EEOC") or to file a civil action within ninety days. On December 17, 2003, the administrative judge dismissed her MSPB appeal in light of a tentative settlement between Dr. Ikossi and the NRL. Subsequently, after the administrative judge forwarded Dr. Ikossi's letter advising that she had withdrawn from the settlement, the MSPB treated the letter as a petition for review and remanded the case to the administrative judge on August 23, 2004 to determine whether she had timely withdrawn from the settlement.

Meanwhile, on October 10, 2003, Dr. Ikossi filed suit against the Secretary in federal district court alleging that the termination of her employment violated Title VII and the FMLA; on May 14, 2004 she moved to amend her complaint, including adding a hostile work environment claim. She filed a second lawsuit on August 16, 2004 that included her CSRA claims, pursuant to 5 U.S.C. § 7702(e)(1), and added the NRL as a defendant. In this complaint she alleged that she had been the victim of a hostile working environment due to discrimination based on age, gender, and national origin, that she had been, in effect, denied leave under the FMLA due to requests to continue to work while on approved medical leave, and that her termination violated Title VII, the ADEA, the FMLA, and the CSRA. The district court granted her motion to dismiss her initial complaint on August 24, 2004. On December 27, 2004, the administrative judge granted her motion to dismiss her administrative appeal without prejudice because her claims were pending before the district court on *de novo* review; on May 18, 2005, the MSPB denied the NRL's petition challenging the administrative judge's jurisdiction to issue a dismissal without prejudice.

The district court granted the Secretary's motion to dismiss the CSRA and FMLA claims for lack of subject matter jurisdiction, dismissed the pre-termination claims as time barred, and granted the Secretary's motion for summary judgment on the discrimination claims related to Dr. Ikossi's termination, concluding that she had failed to rebut the NRL's lawful reason for terminating her employment and denying her Rule 56(f) request for discovery. *Ikossi v. England*, 406 F. Supp. 2d 23 (D.D.C. 2005). Dr. Ikossi appeals, except for the dismissal of her FMLA claim. Our review is *de novo*, *see Wilson v. Pena*, 79 F.3d 154, 160 n.1 (D.C. Cir. 1996), except for the denial of discovery, which we review for abuse of discretion, *see Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 238 (D.C. Cir. 1999).

## II.

Section 7702 of Title 5 of the United States Code governs the adjudication of mixed cases, which both challenge adverse personnel actions otherwise appealable to the MSPB and allege that discrimination played a part. *See Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999). As relevant to district court jurisdiction, section 7702(e)(1) provides that:

> Notwithstanding any other provision of law, if at any time after -
> . . .
>> (B) the 120th day following the filing of an appeal with the [MSPB] under subsection (a)(1) of this section, there is no judicially reviewable action . . . ,
> . . .
> an employee shall be entitled to file a civil action *to the same extent and in the same manner* as provided in section 717(c) of the Civil Rights Act of 1964 (42

U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), or section 16(b) of the Fair Labor Standards Act of 1938 (29 U.S.C. 216(b)).

5 U.S.C. § 7702(e)(1) (emphasis added).

The district court ruled that the "to the same extent and . . . same manner" clause limited judicial review under section 7702(e)(1)(B) to claims that would otherwise arise under the listed civil rights statutes. *Ikossi*, 406 F. Supp. 2d at 29-30. Therefore, it determined that it lacked jurisdiction over Dr. Ikossi's non-discrimination claims until the MSPB had issued a final decision, at which point Dr. Ikossi could appeal pursuant to 5 U.S.C. § 7703(b), which provides for judicial review based on an administrative record. Dr. Ikossi's challenge to the district court's interpretation of its jurisdiction over her mixed case is well taken because the district court's ruling is inconsistent with the plain text and legislative history of section 7702. While the district court may "stay the case, or hold it in abeyance, for a reasonable period of time" to allow the administrative process to conclude, *Butler* 164 F.3d at 643, it errs in dismissing non-discrimination claims for lack of subject matter jurisdiction because there is not a final decision by the MSPB.

The plain text of the concluding clause of section 7702(e)(1) — "to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964,. . . section 15(c) of the [ADEA], . . . or section 16(b) of the Fair Labor Standards Act of 1938" — demonstrates that it is not a limitation on the type of claims that may be pursued under section 7702(e)(1). The three referenced statutory provisions are procedural in nature: section 717(c) addresses the time for bringing a civil action and requires that the "head of department, agency, or unit" be named the defendant, 42 U.S.C. § 2000e-

16(c); section 15(c) creates jurisdiction in the federal district court and provides for both legal and equitable relief, 29 U.S.C. § 633a(c); and section 16(b) authorizes damages and identifies federal or state court as the proper venue, 29 U.S.C. § 216(b). Thus, the concluding clause of section 7702(e)(1) merely specifies the procedure that governs mixed cases brought pursuant to section 7702(e)(1). An illustration of the operation of this clause appears in *Kienlen v. MSPB*, 687 F. Supp. 461, 463 (D. Minn. 1988), where the district court dismissed the MSPB as a defendant upon ruling that section 7702(e)(1), by incorporating section 717(c) of the Civil Rights Act, only permitted the plaintiff to name the Postmaster General as a defendant. And as is further illustrated by section 7702(a)(1)(B), which describes the kinds of discrimination claims that may be brought before the MSPB, Congress knew how to invoke the substantive provisions of the civil rights statutes. That provision references the entire "section 717 of the Civil Rights Act of 1964" rather than only section 717(c).

The procedural nature of the concluding clause of section 7702(e)(1) also accords with its omission of any reference to the Rehabilitation Act, which is listed in section 7702(a) as a basis for a discrimination claim protected under section 7702. *See* 5 U.S.C. § 7702(a)(1)(B)(iii). Although the Rehabilitation Act provides substantive protection against discrimination, 29 U.S.C. § 791, it does not include procedural requirements for judicial review, incorporating instead the requirements of section 717 of the Civil Rights Act, *see* 29 U.S.C. § 794a; because section 7702(e)(1) already incorporates section 717(c), reference to the Rehabilitation Act would have been superfluous. Reading section 7702(e)(1) to impose a jurisdictional requirement would create the odd result that a plaintiff alleging discrimination on the basis of disability, unlike a plaintiff alleging a violation of any other civil rights law identified in section 7702(a)(1)(B), would be foreclosed from

seeking judicial review after the MSPB had failed to render an appealable decision after 120 days. Moreover, interpreting the concluding clause of section 7702(e)(1) as more than a procedural limitation is incompatible with Congress's intent to set a timetable for the MSPB to decide "both the issue of discrimination and the appealable action," 5 U.S.C. § 7702(a)(1)(B), as it would deny the complainant a right to enforce this timetable with respect to a portion of her claim.

Construing section 7702 to confer jurisdiction over all elements of a mixed case is also consistent with the section's "treatment of mixed cases in previous stages of the process: section 7702 explicitly requires the Board in appealable cases alleging both discrimination and non-discrimination claims to decide *both* issues," *Wiggins v. U.S. Postal Serv.*, 653 F.2d 219, 221-22 (5th Cir. 1981) (emphasis in original) (quotation marks omitted). This holding also reflects the legislative history, which states that "questions of the employee's inefficiency or misconduct, and discrimination by the employer, [are] two sides of the same question and must be considered together," *Doyal v. Marsh*, 777 F.2d 1526, 1537 (11th Cir. 1985) (quoting S. Rep. No. 95-969, at 53 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2775); *see also Williams v. Dep't of the Army*, 715 F.2d 1485, 1490 (Fed. Cir. 1983) (en banc) (quoting same). As this court has observed, "discrimination and nondiscrimination claims . . . are closely related both logically and as a factual matter." *Hayes v. U.S. Gov't Printing Office*, 684 F.2d 137, 140 (D.C. Cir. 1982).

While this court has not yet addressed whether a district court has jurisdiction over non-discrimination claims under section 7702(e), it has long viewed "[t]he plain language of [5 U.S.C. §§ 7702-03] [to] suggest[] that a mixed case is to be treated as a unit, and is to be brought before the district court." *Id.* at 139. The court in *Hayes* held that the district court rather

than the court of appeals has jurisdiction over both discrimination and non-discrimination claims when an employee appeals a final decision by the MSPB. *See id*. at 139, 140 & n.2. In *Butler*, the court similarly concluded that section 7702(e) "clearly express[es] Congress' desire that mixed cases should be processed expeditiously, and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery." 164 F.3d at 640. So long as "the complainant has neither deliberately abandoned the administrative regime, . . . nor refused to cooperate in its processes, . . . section 7702(e)(1)(B) explicitly sanctions a civil action in the federal district courts once 120 days have passed without a final decision from the MSPB." *Id.* at 643. The court reached this conclusion after observing that "[t]he MSPB and EEOC regulations that structure the prosecution of mixed cases are extremely complicated," *id.* at 638, and outlining the statutory "decision tree" to be applied, *id.* at 638-39. Subsequently, in *Evono v. Reno*, 216 F.3d 1105, 1109 (D.C. Cir. 2000), the court followed this decision tree and again concluded that "[s]ection 7702(e)(1) provides an employee with a right to file a 'mixed case' in the district court." Neither *Evono* nor *Butler*, however, involved non-discrimination claims.

The Sixth and Eleventh Circuits have expressly held that the district court has jurisdiction over non-discrimination claims when agencies fail to meet the 120-day time line established by section 7702(e)(1)(B). *See Valentine-Johnson v. Roche*, 386 F.3d 800, 808, 811, 813 (6th Cir. 2004); *Seay v. TVA*, 339 F.3d 454, 472 (6th Cir. 2003); *Doyal*, 777 F.2d at 1533, 1535-37. Thus, in *Seay*, the Sixth Circuit held that the district court had subject matter jurisdiction over non-discrimination claims where the employer's EEO office failed to act within 120 days and that the plaintiff was not required to develop an administrative record by appealing to the MSPB. 339 F.3d at 471-72. Following *Seay*, the Sixth Circuit in *Valentine-Johnson* "rejected

the argument that 'nondiscrimination claims must always be reviewed on an administrative record.'" 386 F.3d at 813 (quoting *Seay*, 339 F.3d at 472). In *Doyal*, the Eleventh Circuit held that "the entire mixed case complaint was properly before the district court," 777 F.2d at 1537, and stated that "Congress, through [] section [7702(e)(1)], has explicitly given the employee certain rights and options, one of which is to file a civil action based on his mixed case complaint before resorting to the MSPB," *id*. at 1536.

The Secretary's analysis of *Valentine-Johnson* and *Seay* hardly compels a contrary interpretation. *Valentine-Johnson* is not a "solitary decision," Appellee's Br. at 27, and *Seay* does not support his position that the district court lacked subject matter jurisdiction over Dr. Ikossi's complaint. In *Seay*, the Sixth Circuit correctly stated that "[o]n-the-record review is required for nondiscrimination claims . . .[that are] *appealed* from the MSPB," 339 F.3d at 472 (emphasis added), which would occur under section 7703 addressing appeals where the MSPB has ruled on the complainant's claims. But Dr. Ikossi is not appealing an MSPB decision but rather proceeding pursuant to section 7702(e)(1) because the MSPB did not render a final decision within 120 days of the filing of her administrative appeal, and under that provision the district court may review her entire mixed case without an administrative record. The Secretary does not mention the Eleventh Circuit's opinion in *Doyal* (nor does Dr. Ikossi), and he has not cited any circuit court of appeals decision (or, for that matter, any district court opinion other than the one under review here) holding that the district court lacks jurisdiction over the non-discrimination aspects of a mixed case when a lawsuit is filed pursuant to section 7702(e)(1). In *Vanover v. O'Leary*, 967 F. Supp. 1211, 1221 (N.D. Okla.1997), cited by the district court, *Ikossi*, 406 F. Supp. 2d at 29, but not the parties here, the district court held it could address the non-discrimination claims in a mixed case

brought pursuant to § 7702(e)(1) only if the MSPB issued a final decision before the district court disposed of the discrimination claims. 967 F. Supp. 1220-21. Although we credit the district court's concern that it did not "have the expertise to address the issue of whether a federal employee's termination was for the efficiency of the service," *id*. at 1221; *see Butler*, 164 F.3d at 643, the appropriate action in that situation is not to dismiss for lack of jurisdiction but rather to "stay the case, or hold it in abeyance, for a reasonable period of time," *id*. Insofar as *Vanover* suggests that the district court lacks jurisdiction to consider *de novo* the non-discrimination claims in a mixed case, we disagree with its conclusion.

Moreover, the MSPB's grant of Dr. Ikossi's motion to dismiss her mixed case does not, as the Secretary suggests, oust the district court of jurisdiction. Dr. Ikossi cannot be deemed to have abandoned her non-discrimination claims by filing a motion in her administrative proceeding after she had filed her civil suit; to the contrary, her motion was designed to avoid the burden of concurrently litigating the same claims before both the district court and the MSPB. The Secretary's reliance on *Vinieratos v. U.S. Department of Air Force*, 939 F.2d 762 (9th Cir. 1991), is misplaced. In *Vinieratos*, the Ninth Circuit affirmed the dismissal of the complaint because the plaintiff, having elected an administrative remedy, failed to exhaust it by "wholly obstruct[ing] both the previously initiated EEO efforts and the MSPB's efforts" and thus had effectively abandoned the administrative proceedings. *Id.* at 770. Nothing in *Vinieratos* suggests that filing a motion to dismiss in an administrative forum can divest the district court of jurisdiction over a previously filed complaint.

## III.

Dr. Ikossi's challenge to the dismissal of her pre-

termination claims, however, fails. To be timely, she was required within ninety days of the EEO dismissal of her complaint either to appeal to the EEOC or to file a civil suit. *See* 42 U.S.C. § 2000e-16(c). She did not appeal to the EEOC, and although her initial complaint in district court was filed within ninety days of the EEO dismissal, it did not raise her pre-termination claims. Her second complaint, which did raise her pre-termination claims, was filed on August 16, 2004, long after the ninety-day period had expired.

Dr. Ikossi advances no persuasive argument that waiver, estoppel, or equitable tolling applies. *See Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006). She contends that her motion to amend her initial complaint to add her pre-termination claims should excuse her delinquency. But this motion was not filed within ninety days of the dismissal. Alternatively she contends that the MSPB was obligated to extend its jurisdiction over her pre-termination claims after the EEO office dismissed her case, and therefore the district court can exert jurisdiction over them pursuant to section 7702(e)(1). Yet she never requested the MSPB to consider these claims; her only filing with the MSPB with respect to her pre-termination claims stated that they were before the EEO office. Even assuming that the MSPB would have had jurisdiction once the EEO office dismissed her pre-termination claims on the stated assumption that she could raise them as part of her mixed case, Dr. Ikossi still had to raise them before the MSPB in order for section 7702(e)(1) to apply. Dr. Ikossi's contention that her termination claim, which was timely filed, sufficed under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), to raise the panoply of her pre-termination hostile work environment claims is also to no avail, for *Morgan* does not suggest that a plaintiff can obtain judicial review of an EEO decision outside of the ninety-day period or raise a hostile work environment claim without first exhausting her administrative remedies, *see, e.g.*, *Greer v.*

*Paulson*, 505 F.3d 1306, 1317-18 (D.C. Cir. 2007). Rather, *Morgan* held merely that "[t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." 536 U.S. at 117.

**IV.**

Dr. Ikossi's challenge to the district court's grant of summary judgment to the Secretary before permitting discovery pursuant to Rule 56(f) might present a closer question in the absence of the district court's jurisdictional error and with the benefit of a complete administrative record, but we conclude that she sufficiently demonstrated a need for discovery.

Rule 56(f) provides that:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any just order.

In *Hackley v. Roudebush*, 520 F.2d 108, 149 (D.C. Cir. 1975), the court rejected the notion that a district court can ordinarily resolve a Title VII complaint based on the administrative record, noting the "substantial interests served by a fair and complete judicial fact-finding process, replete with the tools of discovery and compulsory process." The court stated:

> Rather than presuming that the record is properly the

> sole basis for decision, and that the plaintiff must affirmatively establish his need for supplementation, courts should focus on the employee's complaint. The administrative record should be admissible as one piece of evidence concerning the issues raised in the complaint, but the employee should have the right to conduct discovery and compel the attendance of witnesses to furnish additional evidence. The Federal Rules accord the trial judge sufficient control over the conduct of discovery and the trial that duplication of proceedings — which serves no party's interest — should be minimal.

*Id.* at 151. More recently, in *Chappell-Johnson v. Powell*, 440 F.3d 484 (D.C. Cir. 2006), the court concluded that the district court abused its discretion by granting summary judgment in a Title VII case where the plaintiff had been afforded no discovery, citing cautioning instruction from the Supreme Court against premature grants of summary judgment, *id.* at 488 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1379 (D.C. Cir. 1988).

Nonetheless, Dr. Ikossi had the burden to state with "sufficient particularity to the district court — or, for that matter, to this court — why discovery was necessary." *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). The affidavit filed by Dr. Ikossi's attorney identifies four individuals whom he wished to depose: her supervisors at the NRL (Drs. Webb and Borsuk and Mr. Boos) and a staff member at the NRL's HRO. Although the affidavit states that discovery is sought regarding their motivations in taking disciplinary action against Dr. Ikossi, it does not identify precisely what evidence it is hoped will be

discovered. This lack of precision does not make any less self-evident, however, the nature of the evidence Dr. Ikossi seeks; Dr. Ikossi believes that the depositions of those four individuals will produce additional evidence that the termination of her employment was in retaliation for her pursuing an EEO complaint and for exercising her FMLA rights and was unlawfully motivated by gender, age, or national origin discrimination. By providing an explanation for their actions, the four individuals, all of whom were involved in the NRL's disciplinary process, may reveal their motives, which lie at the heart of Dr. Ikossi's discrimination claims.

In denying Dr. Ikossi discovery for failing to show that the requested depositions would be "essential to justify [her] opposition," *Ikossi*, 406 F. Supp. 2d at 37 (quoting Fed. R. Civ. P. 56(f)) prior to the 2007 amendment) (alteration in original), the district court concluded that "[t]he record in this case is extensive, and all of the major factual disputes appear to be quite well fleshed out. Further, plaintiff . . . has already had at least two opportunities to examine her three most promising proposed witnesses under oath." *Id.* at 36. However, neither reason survives analysis. First, the record in the district court does not appear to be as comprehensive as the district court's conclusion suggests. Fewer than twenty pages of the transcript of over 300 pages of the hearing before the administrative judge is in the district court record. Of those pages, all but three are testimony by Dr. Ikossi. The district court record also does not contain affidavits from any of the four individuals named in the Rule 56(f) affidavit. Further, one of them did not testify before the administrative judge and no testimony from a second appears in the district court record.

Second, the pages of the transcript of the administrative judge's hearing before the district court do not indicate the scope of the one-day hearing. Dr. Ikossi asserts that the hearing was

"tightly constrained . . . so that the hearing could be completed in one day," Reply Br. at 13, an assertion the Secretary did not contest during oral argument. Although her attorney's affidavit stated that none of the four individuals had been deposed, Dr. Ikossi does not deny that three of them testified at the hearing. Still, the district court record does not indicate whether Dr. Ikossi was afforded a reasonable opportunity to cross-examine those three. The other examination opportunity referenced by the district court presumably was the EEO fact-finding hearing on November 20, 2002 on Dr. Ikossi's pre-termination claims. But this hearing could not provide her with an opportunity to elicit evidence about the termination of her employment because it occurred months before Dr. Webb had proposed her removal from federal service. Also, the district court record contains only twenty-three pages of the EEO transcript, all but five of which are testimony by Dr. Ikossi. Additionally, Dr. Ikossi notes that the district court record contained a transcript of a reference check conducted after the MSPB hearing, during which Dr. Webb made comments about her national origin, and she has never had an opportunity to question him about his motives in view of this comment.

Further, because the district court ruled that it lacked jurisdiction over Dr. Ikossi's non-discrimination claims, it never considered her request for discovery in light of all of the claims that were properly before it. Although the claims in a mixed case may be "closely related both logically and as a factual matter," *Hayes*, 684 F.2d at 140, they are not identical. It is true that the district court record includes numerous documents and reveals that Dr. Ikossi filed responses to Dr. Webb's proposal to terminate her employment. For example, Dr. Ikossi has proffered emails authored by Dr. Webb, Dr. Dietrich, and Mr. Boos. However, self-generated emails are hardly comparable to testimony under oath. Given the key nature of testimony by the witnesses whom Dr. Ikossi sought to depose, the limited record

of the administrative proceedings before the district court and the limited scope of those hearings, and the district court's misunderstanding of the claims properly presented to it, the district court abused its discretion in denying Dr. Ikossi's request for reasonable discovery in this trial *de novo.* Consequently, the grant of summary judgment was premature.

Accordingly, we affirm the dismissal pursuant to Rule 12(b)(6) of the pre-termination claims as untimely filed, and we reverse the dismissal of the MSPB non-discrimination claims pursuant to Rule 12(b)(1) and the grant of summary judgment on the discrimination claims pursuant to Rule 56 and remand the case to the district court.