**FAWN MINING CORPORATION,**
**Plaintiff,**

v.

**Marty D. HUDSON, et al., Defendants.**

**Civ. A. No. 93–2256 (JR).**

United States District Court,
District of Columbia.

Feb. 24, 1995.

William Henry Howe, Richard Alan Steyer, Mary Lou Smith, Howe, Anderson & Steyer, Washington, DC, for Fawn Min. Corp.

Paul A. Green, John R. Mooney, Beins, Axelrod, Osborne, Mooney & Green, P.C., Peter Buscemi, Morgan, Lewis & Bockius, Washington, DC, for Marty D. Hudson, et al., Trustees of the 1992 UMWA Benefit Plan.

John R. Woodrum, Ronald E. Meisburg, Terrence J. Nolan, Smith, Heenan & Althen, Washington, DC, for BethEnergy Mines, Inc.

Stephen J. Pollak, Wendy S. White, Shea & Gardner, Washington, DC, for United Mine Workers of America Combined Benefit Fund, et al.

David West Allen, United Mine Workers of America Health and Retirement Funds, Office of General Counsel, Washington, DC, for United Mine Workers of America Health and Retirement Funds.

### AMENDED MEMORANDUM OPINION

ROBERTSON, District Judge.

Before the court in this declaratory judgment action are cross-motions for summary

judgment posing the narrow question whether a number of retirees were, on July 20, 1992, "receiving benefits" from a certain United Mine Workers of America (UMWA) benefit plan. The answer to that question will determine which of two new UMWA funds will provide health care coverage to the retirees and who will pay the health care premiums. Congress established the new funds as part of the Coal Industry Retiree Health Benefit Act of 1992, Pub.Law 102–486, 106 Stat. 3037, 26 U.S.C. § 9701 *et seq.* The court's task is to apply the definitional language of that statute to undisputed facts. The retirees themselves will not be affected by the outcome of this dispute. They are covered in any event.

## FACTS

In May 1990, plaintiff Fawn Mining Corporation (Fawn) began coal mining operations in and around Saxonburg, Pennsylvania. Fawn employed UMWA-represented mine workers and established a health benefit plan for them. Only nine months later, in February 1991, Fawn closed down its mining operations. A year after that, in February 1992, Fawn stopped providing health benefits. At that point, some 40 Fawn retirees—mine workers and their dependents—turned for coverage to an "orphan fund" maintained by the UMWA. That fund, called the UMWA 1974 Benefit Plan and Trust (1974 Fund), provided health care benefits to UMWA retirees whose former employers were "no longer in business." The 1974 Fund declined to provide coverage for the Fawn retirees. It took the position that Fawn should continue to provide coverage because its corporate parent was solvent—that the "no longer in business" clause should not permit Fawn to escape the obligation it had undertaken through a collective bargaining agreement to continue paying for health and pension benefits.

After the 1974 Fund's refusal to provide coverage to the Fawn retirees, the UMWA brought suit in United States District Court for the Western District of Pennsylvania, No. 92–0305, seeking to compel the 1974 Plan to provide coverage. On October 1, 1992, the

UMWA, the UMWA Health and Retirement Funds, and representative retirees resolved the dispute by consent: the parties agreed to a preliminary injunction directing that Fawn retirees would be covered by the 1974 Fund.[1] In compliance with that injunction, the 1974 Fund then paid or made reimbursement for medical services rendered to Fawn retirees, including services rendered before the critical date of July 20, 1992.

The July 20, 1992 date is significant within the context of the Coal Industry Retiree Health Benefits Act (CIRHBA). CIRHBA was enacted on October 24, 1992, in response to a crisis in the funding of UMWA retiree health benefits. In order to deal with deficits in existing plans, ensure sufficient operating assets and provide for continuation of a privately funded, self-sufficient benefit program, Congress mandated the creation of two new trust funds. The first was formed by merging the 1974 Fund with an earlier UMWA plan, the 1950 UMWA Benefit Plan. The merged fund, called the UMWA Combined Benefit Fund (Combined Fund), was to provide health care benefits to every "eligible beneficiary." 26 U.S.C. § 9703(b)(1). "Eligible beneficiary" was defined by 26 U.S.C. § 9703(f):

> For purposes of this subchapter, the term "eligible beneficiary" means an individual who—
>
> (1) is a coal industry retiree who, on July 20, 1992, was eligible to receive, and receiving, benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, or
>
> (2) on such date was eligible to receive, and receiving, benefits in either such plan by reason of a relationship to such retiree.

The second new fund, called the 1992 Plan, was established to provide benefits to eligible retirees who were not beneficiaries of the Combined Fund and who were not receiving health care coverage directly from their employers. 26 U.S.C. § 9712(b)(2).

CIRHBA took effect on February 1, 1993. On April 16, 1993, the Pennsylvania court entered an agreed order dismissing the cross-claims of the Fawn retirees without

---

1. Fawn was a party to the Pennsylvania litigation, but did not sign the consent order.

resolving the question of which new fund would cover the retirees. The present litigation was then precipitated by the decision of the UMWA plan administrator that the "orphaned" Fawn retirees could not be enrolled in the Combined Fund because they were not "receiving benefits" in the 1974 Fund on July 20, 1992. The retirees were enrolled instead in the 1992 Plan and, on April 30, 1993, the 1992 Plan sent a bill to Fawn for premiums due.

Fawn's complaint filed on October 29, 1993, seeks a declaration that Fawn is not liable to the 1992 Plan for premiums because its retirees are entitled to coverage by the Combined Fund. BethEnergy, Inc., which sold the Saxonburg mining operation to Fawn, has intervened to assert the opposite view; BethEnergy would be liable to pay most of the premiums if Fawn were to prevail here.

## DISCUSSION

■ In a case that turns upon the meaning of statutory language, the court's task is "to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (interior quotations omitted).

■ The parties agree that the Fawn retirees were "eligible" to receive benefits from the 1974 Fund on July 20, 1992. Their eligibility was asserted when the Pennsylvania litigation was initiated in June 1992. The issue was *sub judice* on July 20, 1992 and was resolved by the consent order on October 1, 1992.

The Pennsylvania litigation might have resolved the "receiving benefits" issue presented in this case as well, but it did not. The October 1 consent order contained no language of retroactivity.[2] And the language of the subsequent agreed order dismissing the cross-claims of the Fawn retirees seems de-

liberately to have left to another day—and to this court—the question of which plan would cover the Fawn retirees after CIRHBA's effective date.

In this court, defendants urge that the Fawn retirees were not "receiving benefits" on July 20, 1992 because of the undisputed fact that they were not *enrolled* in the 1974 Plan until after the October 1, 1992 consent order took effect. Plaintiffs respond that the issuance of a health benefits card cannot be equated with "benefits" and point to the undisputed fact that the Fawn retirees were later *reimbursed* for health care they had received before, on and after July 20, 1992.

Apparently recognizing that their arguments beg the question of what "benefits" are under CIRHBA, the parties seek to support their respective positions with legislative history.

■ Plaintiffs rely heavily on a statement of Senator Rockefeller made during floor debate:

> "At various places in the bill, such as in Section 9711(b)(1) and Section 9712(b)(2), individuals must be receiving benefits by certain dates or must have retired by certain dates in order to be entitled to benefits under the bill. For purposes of these provisions, *an individual is considered to be receiving benefits* or to be retired *if he is fully eligible for and has applied for benefits.* An individual will not be considered ineligible for benefits merely because he has [not] yet been determined to be eligible."

138 Cong.Rec. S.17634–35 (daily ed. October 8, 1992) (emphasis added). A single reference by a single senator during floor debate is entitled to little weight, *Bath Ironworks v. Director OWCP*, — U.S. ——, ——, 113 S.Ct. 692, 700, 121 L.Ed.2d 619 (1993); *see West Virginia University Hospital Inc. v. Casey*, 499 U.S. 83, 98–100, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). In this case, whatever weight Senator Rockefeller's "comment for the record" carries is neutralized by the "Findings and Declaration of Policy" sec-

---

**2.** The order was not entered *nunc pro tunc*. It was to take effect, not as of some earlier date, but upon the posting of a $10,000 bond (ten Fawn retirees were parties to the suit), to be increased by $1000 for every additional retiree for whom the 1974 Fund became responsible under the order.

tion of the House–Senate Conference Report, which was printed in the Congressional Record at the request of Senator Wallop as "a technical explanation of the provision...." 138 Cong.Rec. S17603 (daily ed. October 8, 1992):

> [T]he Conference Agreement ... provides ... for a privately financed and administered benefit plan structure, with eligibility limited to those individuals *actually receiving* benefits from the UMWA Plans on July 20, 1992.

*Id.* (emphasis added).

For their part, defendants rely chiefly on the proposition that Congress, when it crafted § 9703(f), intended to create a closed pool of eligible beneficiaries of the Combined Fund, and that this closed pool embodied a difficult and fragile legislative compromise that this court should not disturb. The "closed pool" argument would be more compelling if the trustees of the Combined Plan had not agreed to enroll some 232 additional persons who became dependents of eligible retirees, by birth or marriage, *after* July 20, 1992. Defendants' response to that point, by way of confession and avoidance, is that the decision to let more dependents in the pool was driven by administrative convenience. That response is difficult to square with 26 U.S.C. § 9703(f)(2), which appears to impose the July 20, 1992, date limitation on dependents as well as retirees.[3]

I find the legislative history arguments of the parties inconclusive—and unhelpful as to the meaning of "benefits." I do find contextual support for defendants' position, *cf. King v. St. Vincent's Hospital,* 502 U.S. 215, 220–22, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991), in § 9703(b)(1) of CIRHBA. That provision states that the trustees of the Combined Fund are to "provide health care benefits to each eligible beneficiary *by enrolling the beneficiary in a health services plan....*" While this language is not dispositive—it refers to the Combined Fund rather than the 1974 Plan, and it speaks of providing rather than receiving benefits—it does provide a basis in the language of the statute itself for defendants' argument that "benefits" are conferred and received through the act of enrollment.

I also conclude that the meaning of § 9703(f) ultimately turns upon the strong temporal sense of the words "receiving benefits." "Receiving" is the present participle, a verb form that carries action forward in the present tense. The only action that was taking place and going forward for the Fawn retirees on July 20, 1992, was health care. That health care was only later determined to be reimbursable. On July 20, 1992, the Fawn retirees had neither the reimbursement in hand nor the security of knowing they would receive reimbursement. They were not, in any common sense understanding of the verb form chosen by Congress, receiving benefits from the 1974 Fund on July 20, 1992.

Thus, although the language of § 9703(f) is not perfectly clear, I find it at least "reasonably plain," *see Griffin v. Oceanic Contractors, Inc., supra,* that the Fawn retirees were not "receiving benefits" under the 1974 Plan on July 20, 1992 because they were not then enrolled in the 1974 Plan. They are therefore not "eligible beneficiaries" entitled to enrollment in the Combined Plan. An order has accordingly been issued denying the motions for summary judgment of Fawn Mining Corporation, Thomas F. Connors, and Robert Wallace, and granting the motions for summary judgment of the United Mine Workers of America Combined Benefit Fund, BethEnergy Mines, Marty D. Hudson, Michael H. Holland, Elliot A. Segal, Thomas O.S. Rand, Carleton R. Sickles, Gail Wilensky, and William P. Hobgood.

---

3. The UMWA Funds' decision to enroll after-acquired dependents is not the act of an executive department entrusted to administer a legislative scheme. *Cf. Chevron, U.S.A. v. Natural Resources Defense,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).