**FAWN MINING CORPORATION,**
**Appellant,**

v.

**Marty D. HUDSON, et al., Appellees.**

**Nos. 95–7051, 95–7062.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1996.

Decided April 5, 1996.

Rehearing and Suggestion for Rehearing In Banc Denied May 24, 1996.*

Mary Lou Smith, Washington, DC, argued the cause for appellant Fawn Mining Corporation, with whom William H. Howe and Richard A. Steyer were on the briefs. Peter Buscemi argued the cause for appellants Thomas F. Connors and Robert Wallace, with whom Dean C. Berry was on the briefs.

Stephen J. Pollak, Washington, DC, argued the cause for appellees Marty D. Hudson, et al., with whom Wendy S. White was on the brief. Paul A. Green and John R. Mooney were on the brief for appellee, Trustees Holland and Hudson of the UMWA 1992 Benefit Plan. John R. Woodrum and Ronald E. Meisburg were on the brief for appellee BethEnergy Mines, Inc.

---

* Circuit Judge Williams would grant the petition for rehearing. Circuit Judge Wald did not participate in the order on suggestion for rehearing in banc.

Before: WILLIAMS, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Circuit Judge WILLIAMS.

SENTELLE, Circuit Judge:

We are asked to review the narrow issue of whether certain retired miners who had formerly worked for Fawn Mining Corporation ("Fawn Mining" or "Fawn") were "receiving benefits" from a particular health plan on July 20, 1992. As the retired miners will receive similar benefits whatever our decision, our result determines only which corporation, appellant Fawn Mining or appellee BethEnergy, Inc. ("BethEnergy"), must pay for these benefits. Having reviewed the matter, we affirm the District Court's grant of summary judgment against Fawn because the retirees were not receiving benefits on July 20, 1992, according to the meaning of the relevant statute.

## BACKGROUND

In the Coal Industry Retiree Health Benefit Act of 1992 ("CIRHBA" or "the Act"), Congress established two plans to provide health benefits to retired coal miners through policies paid for by various coal mining companies for whom the retirees worked. To create one plan, the "Combined Fund," Congress merged the 1950 United Mine Workers Association ("UMWA") Benefit Plan and the 1974 UMWA Benefit Plan. See 26 U.S.C. § 9702 (Supp.1995). The Combined Fund covers all individuals who were eligible for and receiving benefits from either of its two predecessor programs on July 20, 1992. See 26 U.S.C. § 9703(f). All other eligible retirees are covered in the second benefit plan created by the Act, the "1992 Plan." See 26 U.S.C. § 9712(b). The 1992 Plan provides "substantially the same" benefits to its members as the Combined Fund. See id. at § 9712(c)(1). The critical distinction—at least for purposes of this litigation—is that different coal mining companies may be liable for the costs of a particular retiree depending on whether the retiree is eligible

for the 1992 Plan or the Combined Fund. Compare id. at § 9712(d)(1) (assigning 1992 Plan liability to "1988 last signatory operators" as defined by § 9701(c)(4)) with § 9704(a) (assigning liability for Combined Fund premiums to "assigned operator[s]," as defined by § 9701(c)(5)).

In May 1990, Fawn Mining purchased a coal mining operation from BethEnergy and began mining coal in western Pennsylvania. In February 1991, Fawn Mining halted operations. One year later, Fawn stopped providing health benefits to its former employees who had retired. About 40 Fawn retirees sued the 1974 Benefit Plan, demanding that the Plan permit them to enroll in its so-called "orphan fund," which covered retired miners whose employers had become insolvent. The trustees of the 1974 Benefit Plan claimed that the orphan fund did not cover these retirees because Fawn still had a solvent corporate parent, which could not escape Fawn's obligations to its retirees simply because Fawn itself had declared bankruptcy.

On October 1, 1992, representatives of the UMWA, the UMWA Benefit Plans, and the retirees, but not Fawn, signed a consent order in which the signatories agreed that the 1974 Plan would provide temporary coverage for the retirees. The signatories then agreed to the wording of a second order, which further defined the terms of this temporary coverage. According to this second order, the 1974 Plan would reimburse the retirees for health-care costs incurred between October 15, 1991, and February 1, 1993. The order, however, did not specify what benefit plan would cover costs incurred by the retirees after February 1, 1993, which was also the date when CIRHBA merged the 1974 Plan into the Combined Fund and established the separate 1992 Plan. The order's silence as to the retirees' permanent coverage implied the need for some future determination of which of these two programs would enroll Fawn's retirees. The District Court issued the second order and dismissed the suit on April 16, 1993.

Once the 1974 Plan had fulfilled its obligation to the retirees under the dismissal order, the administrator of what was the

1974 Plan had to determine whether the Combined Fund should permanently cover Fawn's retirees. According to CIRHBA, a retiree could not be enrolled in the Combined Fund unless he was eligible for, and receiving benefits from, the old 1950 Plan or 1974 Plan on July 20, 1992. *See* 26 U.S.C. § 9703(f). Although the retirees had, under the court orders, received reimbursement for costs incurred on (and before) July 20, 1992, they did not receive such coverage until the issuance of the orders, which did not occur until well after that date. The administrator therefore decided that he could not place the retirees in the Combined Fund. He instead enrolled them in the 1992 Plan.

The 1992 Plan promptly sent Fawn Mining a bill for its retirees' premiums. Fawn responded by suing the Combined Fund and the 1992 Plan, seeking a declaratory judgment that would enroll the retirees in the Combined Fund. If Fawn won its suit, and its retirees were placed in the Combined Fund, BethEnergy would become liable for most of the retirees' premiums. If the retirees remained in the 1992 Plan, Fawn would remain liable for their premiums.

On February 24, 1994, the District Court granted the Combined Fund's motion for summary judgment against Fawn. *See Fawn Mining Corp. v. Hudson,* 878 F.Supp. 240, 243 (D.D.C.1995). In a brief and thoughtful opinion, the District Court discounted the floor statements of the senator who sponsored CIRHBA and relied instead on the "reasonably plain" language of 26 U.S.C. § 9703(f)—because the retirees were not actually "receiving" benefits of any kind on July 20, 1992, they could not be enrolled in the Combined Fund. *See id.* at 242–43.

Fawn now appeals, joined by the two trustees of the 1992 Plan who are not also trustees of the Combined Fund. Appellants contend that CIRBHA should not be interpreted to exclude Fawn's retirees from the Combined Fund because the retirees would have been receiving coverage from the 1974 Plan as of July 20, 1992, but for the improper decision to exclude them. The trustees of the Combined Fund, along with the two individuals who serve as trustees of both the Combined Fund and the 1992 Plan, and

BethEnergy (who was an intervenor below) oppose the appeal.

## DISCUSSION

This appeal turns on a narrow question of statutory interpretation and application. Because the District Court correctly interpreted and applied 26 U.S.C. § 9703(f), we affirm.

■ We review statutory interpretation by a District Court *de novo. See United States v. Wishnefsky,* 7 F.3d 254, 255 (D.C.Cir. 1993). As always, we begin by examining the text of the statute. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980). The text of 26 U.S.C. § 9703(f) reads:

> [T]he term "eligible beneficiary" means an individual who—
>
> (1) is a coal industry retiree who, on July 20, 1992, was eligible to receive, and receiving, benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, or
>
> (2) on such date was eligible to receive, and receiving, benefits in either such plan by reason of a relationship to such retiree.

26 U.S.C. § 9703(f) (Supp.1995). The District Court found that this provision "reasonably plain[ly]" excludes Fawn's retirees because of the verb form of "receiving." *Fawn Mining Corp.,* 878 F.Supp. at 243.

■ We agree. When the statute's text makes its application reasonably clear, the meaning of the text should control. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982). In this case, the use of the participle underscores that CIRHBA requires some action to have been occurring on July 20, 1992, to link potential beneficiaries to either old UMWA Plan. *See United States v. Wilson,* 503 U.S. 329, 333, 112 S.Ct. 1351, 1353, 117 L.Ed.2d 593 (1992) (noting that the form of the verb used in the statute matters in interpretation). Although these retirees were later to receive compensation for health-care costs incurred on and around July 20, 1992,

the retirees were not "receiving" any benefit on July 20, 1992, itself, as they held "neither the reimbursement in hand nor the security of knowing they would receive reimbursement" on that date. *Fawn Mining Corp.,* 878 F.Supp. at 243. Because the retirees were not receiving anything on July 20, 1992, the text of the Act demands that they not become eligible for placement in the Combined Fund now.

Although we need not further dissect statutory language that has a clear and non-absurd meaning, *see Qi–Zhuo v. Meissner,* 70 F.3d 136, 140 (D.C.Cir.1995), we will linger briefly in order to reject more explicitly several "ambiguities" that appellants allege lurk in the text of 26 U.S.C. § 9703(f). First, appellants contend that the term "receiving" in the phrase "eligible to receive, and receiving, benefits" is ambiguous in that context and should be read to mean that a retiree *was eligible* and *applied* for benefits by July 20, 1992. This result does not read the words of the statute; it rewrites them. "Receiving," especially when used with some item as its direct object, means "tak[ing] possession," "knowingly accept[ing]," or "tak[ing] in;" it does not mean "applying for." *See, e.g., Webster's Third New International Dictionary* 1894 (1961); *see also United States v. Poindexter,* 951 F.2d 369, 379 (D.C.Cir.) (suggesting the importance of considering the objects of a verb as an aid to interpretation), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992).

Second, appellants suggest that the retirees are eligible for the Combined Fund because they did receive reimbursement under the twin court orders for costs incurred during a period including July 20, 1992. This argument also ignores the plain language of the statute. The statute did not require retirees to be receiving benefits "for" July 20, 1992, but "on" July 20, 1992. That the consent order and the subsequent order mandated coverage for the period prior to and including July 20, 1992, does not change the fact that the retirees were not receiving benefits on that date. Nothing in either order implies that the relief given was intended to set back the clock in this respect.

Third, appellants argue that the District Court misinterpreted "benefits" to mean only actual reimbursement. This claim mischaracterizes the decision of the District Court, which reasonably defined "benefits" to mean "the reimbursement in hand [or] the security of knowing [that a party] would receive reimbursement." *Fawn Mining,* 878 F.Supp. at 243. Yet, even if we recast that definition to mean the presence of coverage, as appellants suggest, or, more broadly, some mere probability of reimbursement for future health costs, Fawn's retirees would still not qualify for the Combined Fund because 26 U.S.C. § 9703(f) requires retirees to have actually been receiving such "benefits" from some UMWA health plan on July 20, 1992, in order to be eligible. As these retirees were receiving nothing beneficial from any UMWA plan on this date, even some arguable ambiguity in what the term "benefits" includes would not permit the Combined Fund to enroll these retirees.

Fourth and finally, appellants suggest that a reading of the statute through the lens of equity should permit Fawn to escape liability for its retirees. According to appellants, had the 1974 Plan not wrongly excluded the retirees from the orphan fund when they originally applied, these retirees *would have been* receiving benefits on July 20, 1992. In other words, appellants claim that the statute should have extended coverage to retirees who were "eligible for, and should have been receiving, benefits" on July 20, 1992. Again, this is not resolving an ambiguity, but blatantly rewriting a statute, and thus is due no consideration.

In sum, appellants have not devised sufficient ambiguity for us to doubt the reasonably plain meaning of the statute. As the District Court suggested, other provisions of the statute confirm our result. For example, 26 U.S.C. § 9706(c) requires the 1950 and 1974 Plans to "provide to the Commissioner of Social Security a list of the names ... of each eligible beneficiary" no later than 20 days after the enactment date of CIRHBA, which took effect October 24, 1992. This provision undeniably expected the Combined Fund to know all of its eligible beneficiaries by the end of November 1992. Thus, any of

appellants' readings that might extend Combined Fund eligibility to persons whom the Combined Fund may not have been able to identify as beneficiaries by that time—such as those retirees who merely applied by July 20, 1992, or who later received coverage that included July 20, 1992, or who should have received coverage on July 20, 1992—would require us to ignore or rewrite this section of the statute as well. We will do neither. *Cf. Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 100–01, 112 S.Ct. 2374, 2383–84, 120 L.Ed.2d 73 (1992) (plurality) (indicating that courts should avoid interpreting the text of a provision inconsistently with the necessary assumptions of another statutory provision); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (similarly requiring a statutory provision to be compatible with other clauses of the statute). The plain meanings of both § 9703(f) and § 9706(c) thus demonstrate that we cannot construe Fawn's retirees as "eligible beneficiaries" of the Combined Fund because they were not receiving benefits on July 20, 1992.

## CONCLUSION

Litigators are not legislators. Neither lawyers nor judges serve as back-seat lawmakers who may extend statutes beyond their bounds or change the rules that Congress has set. *See West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 100–01, 111 S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991) (quoting *Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 250–51, 70 L.Ed. 566 (1926)). The statutory phrase of CIRHBA that requires a retiree "to be eligible for, and receiving, benefits" on July 20, 1992, means what it says. As the District Court ultimately ruled, Fawn's retirees were not receiving benefits on July 20, 1992. Any relief they received from subsequent orders does not make them any more qualified to be deemed "eligible beneficiaries" of the Combined Fund under the Act. We therefore affirm the District Court.

*Affirmed.*

STEPHEN F. WILLIAMS, Circuit Judge, dissenting:

Under the Coal Industry Retiree Health Benefits Act of 1992, the retirees from Fawn Mining Corporation will receive benefits from either the "Combined Fund" or the "1992 Plan"; we deal here only with which fund, and therefore which mining company, bears the expense. Among the persons who under the Act are to receive benefits from the Combined Fund are those who "on July 20, 1992, [were] *eligible* to receive, and *receiving,* benefits" from specified predecessor plans. 26 U.S.C. § 9703(f) (emphasis added). On July 20, 1992 the retirees from Fawn Mining did not literally satisfy those criteria because the administrator of the relevant predecessor plan, the "1974 Plan", had resisted their applications. But on October 1, 1992, litigation over the retirees' rights under the 1974 Plan culminated in a court order entitling them to benefits retroactive to October 15, 1991, well before the July 20, 1992 cut-off date. As applied to this unusual and presumably unanticipated set of facts, the term "receiving benefits" does not seem to me to have the "clear meaning" that the majority discerns. Maj.Op. at 6. As I see it, the statute simply does not speak in any direct way to the situation at hand.

No party to this litigation urges a truly literal interpretation of the word "receiving." All agree that a retiree may qualify even though he neither received a benefit payment *on* July 20, 1992 (the super-literal meaning) nor even received a benefit payment before that date. The most that is required in anyone's view is to have applied and been enrolled.

Moreover, contrary to appellees' view, it is quite possible to give independent force to each of the statute's twin requirements—that an employee be "eligible to receive" *and* "receiving" benefits from a predecessor plan on July 20, 1992—and yet sustain payments to the Fawn retirees out of the Combined Fund. The "receiving" requirement can sensibly be read to exclude retirees who, while eligible for benefits, had not applied for them by the relevant date. (Indeed, that is precisely the meaning suggested by the legislative history, as discussed below.)

As the text seems to me ambiguous enough reasonably to permit a construction embracing retirees who were eligible and would have been enrolled but for a later-corrected administrative error, we may turn to the legislative history. See *Burlington N. R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987); *Am. Fed'n of Gov't Employees v. FLRA*, 46 F.3d 73, 77 (D.C.Cir.1995). Senator Rockefeller, sponsor of the Act, explained the "receiving benefits" requirement on the floor as follows:

> At various places in the bill, ... individuals must be receiving benefits by certain dates ... in order to be entitled to benefits under the bill. For purposes of these provisions, *an individual is considered to be receiving benefits ... if he is fully eligible for and has applied for benefits. An individual will not be considered ineligible for benefits merely because he has [not] yet been determined to be eligible.*

138 Cong.Rec. 17,634–35 (1992) (emphasis added). This statement fits the Fawn retirees' situation quite well; it suggests that they are not to be denied benefits from the Combined Fund simply because, on July 20, 1992, the predecessor plan from which they ultimately received benefits for the period including July 20 had not yet accepted responsibility for these payments.

Appellees respond by pointing to a statement in the "Findings and Declaration of Policy" section of the House–Senate conference report on the Act to the effect that eligibility for benefits under § 9703(f) is "limited to those individuals actually receiving benefits from the [predecessor plans] on July 20, 1992." 138 Cong.Rec. 17,603 (1992). This statement simply supplements the statutory language with the word "actually"; it does not directly confront the problem of persons who are eligible and apply for benefits but whose applications, for some reason (here evidently legal error), have not been timely accepted. Senator Rockefeller's statement does address just that class of persons and appears to be an entirely reasonable view of the statutory language.

There remains one wrinkle. It is unclear whether all of the Fawn retirees actually applied to the 1974 Plan for benefits, as opposed to merely being eligible for benefits. Though the record is murky on the point, the parties appear to agree that some Fawn employees did in fact apply. To the extent that others did not, Fawn suggests, and no one else disputes, that the posture of the 1974 Plan in refusing to pay the Fawn retirees' benefits (prior to the October 1, 1992 court order) made applying for benefits an obviously futile exercise. Moreover, the Fawn beneficiaries appear all to have been represented in the lawsuit that ultimately yielded the October 1, 1992 order awarding them retroactive benefits under the 1974 Plan, and thus they all had made a legal claim to enrollment. That seems to me enough to qualify as having applied.

Accordingly, I would reverse the judgment of the district court and grant appellants' motion for summary judgment.