Darlene BUTLER, Appellant,

v.

Togo D. WEST, Jr., Secretary,
Department of the Army,
Appellee.

No. 97–5348.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 5, 1998.

Decided Jan. 8, 1999.

James L. Kestell argued the cause and filed the briefs for appellant.

Michael J. Ryan, Assistant United States Attorney, argued the cause for appellee. On the brief were Wilma A. Lewis, United States Attorney, R. Craig Lawrence, Assistant United States Attorney, and Paige E. Harrison, Special Assistant United States Attorney. Gregory W. Addington, Assistant United States Attorney, entered an appearance.

Before: WALD, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Darlene Butler ("Butler" or "appellant") brings this appeal challenging two rulings by the district court that, taken together, dismissed the entirety of her suit against Togo West, the Secretary of the Army ("appellee"). Prior to her December 11, 1992 removal for insubordination and creating a disturbance, Butler had worked for several years in the Civilian Personnel Office at Walter Reed Army Medical Center in Washington, D.C. ("Walter Reed"). After Equal Employment Opportunity ("EEO") administrative proceedings proved ineffectual, appellant filed a mixed case appeal with the Merit Systems Protection Board ("MSPB" or the "Board") alleging that her removal violated the Civil Service Reform Act of 1978 ("CSRA" or the "Act"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in sections of 5 U.S.C. (1996)), and was motivated by discriminatory animus. The MSPB Administrative Judge's Initial Decision upheld the Army's allegations of insubordination, but mitigated the punishment to a thirty-day suspension and ordered appellant's reinstatement with back pay. The Army petitioned the full Board for review, and Butler filed a cross petition challenging the thirty-day suspension. Subsequently, Butler filed this complaint with the United States District Court for the District of Columbia, suing Togo West in his official capacity and broadly alleging unlawful discrimination in her removal. On defendant's motion, the district court dismissed Butler's Title VII and retaliation claims for failure to exhaust administrative remedies. Following defendant's motion to reconsider retention of her First Amendment claim, the district court dismissed that as well. We find that the district court improperly narrowed the window for filing suit available under 5 U.S.C. § 7702(e)(1)(B), which explicitly allows all of appellant's claims, and accordingly vacate the dismissal and remand for further proceedings.

## I.

The procedural history of this case is convoluted but the controlling legal question is time-specific; consequently, we discuss only those facts necessary to our decision.

On December 11, 1992, the Department of the Army removed Darlene Butler from her position as a GS–11 Position Classification Specialist for insubordination and creating a disturbance. Butler, an African–American woman, had begun to have problems at work roughly two years earlier, following her October 15, 1990 reassignment from the Position Management and Classification Division at Walter Reed to the Recruitment and Placement Division, Special Action Branch. Prior to her termination, she had initiated EEO counseling on four separate occasions—in December of 1991, April of 1992, January of

1993, and either February or March of 1993.[1] Following each episode she filed a formal EEO complaint alleging both racial discrimination and retaliation in various terms and conditions of her employment. In each instance, an Army investigator and an Equal Employment Opportunity Commission ("EEOC") Administrative Judge recommended a finding of "no discrimination," and the Department of the Army ("Army") adopted their recommendations on June 15, 1994.

Following her removal in December of 1992, which she attributed to discriminatory animus and hostility towards her recent election as an officer of a newly-formed chapter of Blacks in Government ("BIG"), Butler again pursued the necessary administrative procedures with the Army. She timely sought EEO counseling, and then filed a formal complaint with the Equal Employment Opportunity Office at Walter Reed in which she alleged that her termination was a product of racial discrimination. The Department of Defense Office of Complaint Investigations recommended a finding of "no discrimination" on December 10, 1993. Butler then filed a "mixed case appeal"[2] with the MSPB on April 5, 1994, challenging her removal as both procedurally improper[3] and discriminatorily motivated. On August 3, 1994, exactly 120 days after Butler lodged her appeal, an MSPB Administrative Judge ("AJ") issued an Initial Decision which held that: (i) the Army had carried its burden of showing that appellant had been insubordinate and had created a disturbance; (ii) the

resulting disciplinary action promoted the efficiency of the agency as required by 5 U.S.C. § 7513(a)[4]; (iii) the procedural errors made in removing the appellant were harmless; (iv) Butler failed to make out her affirmative defenses of retaliation and discrimination; and (v) that the removal penalty was unreasonable. Accordingly, the AJ mitigated her removal to a thirty-day suspension and ordered back pay with interest. The Army petitioned the MSPB to review this penalty reduction within the thirty-five-day period provided for by the MSPB's regulations, see 5 C.F.R. § 1201.114(d), and appellant filed a cross petition addressing only her nondiscrimination claim of procedural irregularities.

On October 11, 1994, while the cross petitions were pending before the MSPB, appellant filed this action in the United States District Court for the District of Columbia, naming Togo West, in his official capacity as the Secretary of the Army, as defendant. Butler's complaint contained three counts, alleging racial discrimination, retaliation, and a violation of her First Amendment rights to free speech and association. Subsequently, on December 21, 1994, the MSPB denied both petitions for review and the AJ's Initial Decision became final. See 5 C.F.R. § 1201.113(b) ("If the Board denies all petitions for review, the initial decision will become final when the Board issues its last decision denying a petition for review."). In March of 1995, the appellee moved to dismiss Butler's lawsuit under Rule 12(b) of the Federal Rules of Civil Procedure or, in the alter-

---

1. The record before us is unclear as to the exact dates that EEO counseling initiated. The Bench Decision of the EEOC Administrative Judge lists December 6, 1991, April 13, 1992, January 13, 1993, and February 10, 1993. *See Butler v. West,* Complaint Nos. 170–94–7116X, 170–94–8124X, 170–94–8239X, 170–94–8240X, at 3–6 (E.E.O.C. May 12, 1994). The district court, by contrast, cites December 6, 1991, April 6, 1992, January 13, 1993, and April 22, 1993. *See Butler v. West,* No. 94–2182 at 2 (D.D.C. Feb. 14, 1997).

2. "A mixed case appeal is an appeal filed with the MSPB that alleges an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2).

3. Butler alleged that the Army failed to follow the procedures articulated in the Walter Reed Army Medical Center Supervisor's Handbook for the recommendation and processing of adverse actions. The MSPB Administrative Judge found that the agency failed to adhere to its normal procedures for initiating and investigating disciplinary matters, but that this departure neither harmed nor prejudiced the appellant. *See Butler v. Department of the Army,* USMSPB Initial Decision, No. DC–0752–94–0396–I–1, at 9 (August 3, 1994).

4. 5 U.S.C. § 7513(a) provides that "[u]nder regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service."

native, for summary judgment, alleging that Butler filed her complaint prematurely as the MSPB had not yet issued a final decision. The district court dismissed appellant's discrimination claims as untimely in a February 14, 1997 Memorandum Opinion, reasoning that Butler had failed to exhaust available administrative remedies under the CSRA prior to filing suit. While the court originally held that she had stated a timely First Amendment claim independent from her Title VII action, a November 12, 1997 Memorandum Opinion and Order granted the defendant's motion for reconsideration and dismissed Butler's First Amendment claim as equally untimely under the CSRA.

Recognizing that it faced a question of first impression, the district court found that appellant filed her suit at a time when the court lacked jurisdiction to hear her complaint. Although section 7702(e)(1)(B) states that an individual claiming discrimination shall be entitled to file a civil action if there is no judicially reviewable action within 120 days following the filing of an appeal with the MSPB, the court held that an initial decision by the AJ within that period is sufficient to foreclose immediate access to the federal courts. For purposes of section 7702(e)(1)(B), it ruled, "[a]n initial decision is essentially the same as a final decision...." *Butler v. West,* No. 94–2182 at 7 (D.D.C. Feb. 14, 1997) ("*Butler I*").

The court articulated three separate grounds for this conclusion: First, it reasoned that an initial decision and a final decision are functionally indistinguishable, as the former automatically converts into the latter provided that neither party (nor the MSPB on its own motion) seeks further Board review. Second, it noted that 29 C.F.R. § 1614.310(h) authorizes an individual with a mixed case to file a civil action "[a]fter 120 days from the date of filing an appeal with the MSPB if the MSPB has not yet made a *decision*" (emphasis added). Since the EEOC refers to a *final decision* in other

subsections of 29 C.F.R. § 1614.310, the court concluded that the EEOC's use of the more general term *decision* in section 1614.310(h) signals an intent that any MSPB decision—initial or final—should foreclose judicial review. Finally, the court reasoned that any other reading of section 7702(e)(1)(B) would lead to absurd results that defied the purpose of the statute, since it necessarily takes more than 120 days for the MSPB fully to process most claims before it. Were a prospective plaintiff allowed to proceed in district court whenever the Board failed to meet that deadline, the statutory requirement of MSPB participation would be rendered meaningless.

According to the district court, appellant should have followed the alternative avenue into the federal courts provided by 5 U.S.C. § 7703(b), which allows a civil suit to be filed within thirty days of a final MSPB decision. Since Butler neither refiled her suit nor moved to amend her complaint within the thirty-day period following December 21, 1994, the date on which the Initial Decision became final, her complaint was untimely. In this appeal, Butler challenges the district court's construction of the relevant statutory provisions, arguing that her suit was timely under 5 U.S.C. § 7702(e)(1) as the MSPB had failed to issue a judicially reviewable decision within 120 days after Butler lodged her appeal. We agree.[5]

## II.

■ The CSRA lays out a comprehensive statutory framework for the processing of mixed case appeals, which has been supplemented and elaborated by regulations issuing from both the EEOC and the MSPB. *See* 5 U.S.C. § 7702; 5 C.F.R. §§ 1201.151–1201.175; 29 C.F.R. §§ 1613.401–1613.421. As the procedural history of this case well illustrates, the provisions that structure both administrative and judicial review of adverse personnel actions form a complicated tapes-

---

5. Appellant additionally asserts (i) that her complaint "ripened" when the MSPB denied the cross petitions for review and the Initial Decision became final, such that her complaint then became timely under 5 U.S.C. § 7703(b), and (ii) that she did not have to exhaust administrative

remedies with respect to her First Amendment claims, as the MSPB was incapable of granting full relief. Since we hold appellant's complaint timely under 5 U.S.C. § 7702(e)(1), we do not reach these contentions.

try. Where Congress has spoken authoritatively, the time limits articulated by the Act have been strictly policed. *See King v. Dole,* 782 F.2d 274, 276 (D.C.Cir.1986) (per curiam) (given "the clear and emphatic language of the statutory provision" requiring civil action to be filed within thirty days from notice of a judicially reviewable action, district court lacks jurisdiction to hear case filed thirty-one days after receipt of notice); *Harrison v. Bowen,* 815 F.2d 1505, 1515 (D.C.Cir.1987) ("reading between the lines [of the CSRA] to interpolate remedies Congress did not provide can only lead the Court into error"). To some extent, this case presents the flip side of *King,* as it requires us to determine whether the equally clear and emphatic language of section 7702(e)(1)(B), which facially permits a lawsuit when 120 days pass without a judicially reviewable decision, merits an equally strict reading. We hold that it does.

## A. *The Statutory and Regulatory Framework for Mixed Case Appeals*

■ 5 U.S.C. § 7702 contains the statutory provisions directly addressing the procedural path of a mixed case—an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination. *See, e.g., McAdams v. Reno,* 64 F.3d 1137, 1141 (8th Cir.1995) (defining the mixed case in similar terms); *Romain v. Shear,* 799 F.2d 1416, 1419 (9th Cir.1986) (per curiam) (same). When the discrimination is alleged as a violation of Title VII, the federal employee must negotiate and exhaust the complex administrative regime that governs Title VII public employment cases in addition to the usual procedures for challenging an adverse personnel action under the CSRA. *See Brown v. General Servs. Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)

(requiring exhaustion of administrative remedies prior to filing a Title VII suit in federal district court).[6] The MSPB and EEOC regulations that structure the prosecution of mixed cases are extremely complicated, but they can be reduced to a decision tree, albeit a somewhat elaborate one. We briefly survey this scheme so as to lay out the statutory and regulatory backdrop for our inquiry into the proper meaning of section 7702(e)(1)(B).

An employee who intends to pursue a mixed case has several paths available to her. At the outset, the aggrieved party can choose between filing a "mixed case complaint"[7] with her agency's EEO office and filing a "mixed case appeal"[8] directly with the MSPB. *See* 29 C.F.R. § 1614.302(b). By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action. *See* 5 U.S.C. § 7702(a). Should she elect the agency EEO route, within thirty days of a final decision she can file an appeal with the MSPB or a civil discrimination action in federal district court.[9] *See* 29 C.F.R. §§ 1614.302(d)(1)(ii), 1614.302(d)(3), 1614.310(a). If 120 days pass without a final decision from the agency's EEO office, the same avenues of appeal again become available: the complainant can file either a mixed case appeal with the MSPB or a civil action in district court. *See* 5 U.S.C. §§ 7702(e)(1)(A), 7702(e)(2); 29 C.F.R. §§ 1614.302(d)(1)(i), 1614.310(g); 5 C.F.R. § 1201.154(b)(2).

When a complainant appeals to the MSPB, either directly or after pursuing her claim with the agency EEO office, the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law. *See* 5 C.F.R. §§ 1201.41(b), 1201.111. The AJ's initial decision becomes a final decision if neither par-

---

**6.** "However, when a federal employee claims he or she has been affected by both an 'adverse employment action' and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB." *Sloan v. West,* 140 F.3d 1255, 1259 (9th Cir.1998) (citing *McAdams,* 64 F.3d at 1141).

**7.** "A mixed case complaint is a complaint of employment discrimination filed with a federal

agency ... related to or stemming from an action that can be appealed to the [MSPB]." 29 C.F.R. § 1614.302(a)(1).

**8.** *See supra* n. 2.

**9.** The party can also appeal the decision to the EEOC, but in that case she forfeits further consideration of all nondiscrimination claims. *See Sloan,* 140 F.3d at 1260 (9th Cir.1998).

ty, nor the MSPB on its own motion, seeks further review within thirty-five days. *See* 5 C.F.R. § 1201.113. However, both the complainant and the agency can petition the full Board to review an initial decision. Should the Board deny the petition for review, the initial decision becomes final, *see* 5 C.F.R. § 1201.113(b); if the Board grants the petition, its decision is final when issued. *See* 5 C.F.R. § 1201.113(c). At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, *see* 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court.[10] *See* 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. § 1614.310(b). Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court. *See* 5 U.S.C. § 7702(e)(1)(B).

**B.** *The Meaning of Section 7702*

▮ We review statutory interpretation by a district court de novo.[11] *See Fawn Mining Corp. v. Hudson,* 80 F.3d 519, 521 (D.C.Cir. 1996); *United States v. Wishnefsky,* 7 F.3d 254, 256 (D.C.Cir.1993). As always, our inquiry starts from "the fundamental canon

that statutory interpretation begins with the language of the statute itself." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). *See also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) (same).

**1.** *The Statutory Language*

▮ The text of 5 U.S.C. § 7702(e)(1)(B) provides that:

> Notwithstanding any other provision of law, if at any time after—
>
> > (B) the 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section [providing for mixed case appeals], there is no judicially reviewable action . . . ;
>
> an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964. . . .

The parties disagree as to the proper meaning of the term "judicially reviewable action"—appellant limits its scope to final decisions, while appellee asserts that it encompasses both initial and final decisions. Since initial decisions are not subject to ju-

---

**10.** On the discrimination claim, the complainant "shall have the right to have the facts subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c). The district court reviews nondiscrimination claims on the administrative record, and will set aside the MSPB's determinations only when "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule or regulation having been followed"; or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3). For applications of these standards, *see Barnes v. Small,* 840 F.2d 972 (D.C.Cir.1988); *Romain v. Shear,* 799 F.2d 1416, 1421 (9th Cir.1986). If the complainant seeks only to pursue her nondiscrimination claim, appeal properly lies with the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1); 5 C.F.R. § 1201.120; *Powell v. Department of Defense,* 158 F.3d 597, 598–99 (D.C.Cir.1998).

**11.** Appellee argues that this case requires a *Chevron* analysis of MSPB and EEOC regulations. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). 5 C.F.R. § 1201.156(a), promulgated by the MSPB, provides that "[w]hen an appellant alleges prohibited discrimi-

nation in the appeal, the judge will decide both the issue of discrimination and the appealable action within 120 days after the appeal is filed." 29 C.F.R. § 1614.310(h), promulgated by the EEOC, allows an individual with a mixed case appeal before the MSPB "to file a civil action in an appropriate United States District Court . . . [a]fter 120 days from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision." According to appellee, the MSPB and EEOC regulations merely require an initial decision within 120 days: section 1201.156(a) requires a "judge," rather than the full Board, to issue a decision, while section 1614.310(h) requires a "decision," rather than a "final decision." We cannot agree. Neither the MSPB nor the EEOC have construed their regulations in such a manner, and neither advances this construction as a party to this dispute. In any case, since we believe that the plain language of 5 U.S.C. § 7702(e)(1)(B) contains the "unambiguously expressed intent of Congress," *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778, and our decision gives effect to that intent, we need not go any further into a *Chevron* step-two analysis.

dicial review, appellant argues, the statute expressly sanctioned her civil action; there was no judicially reviewable action by the 120th day after she lodged her mixed appeal with the MSPB.[12] Appellee rejects this literal reading, embracing a functional approach analogous to that adopted by the district court below. Because an initial decision automatically converts into a final decision unless the parties or the MSPB seeks further review, appellee argues that initial decisions effectively constitute judicially reviewable actions. We think that appellant's reading of the statute is clearly the right one.

The unambiguous and explicit language of section 7702(e)(1)(B), as well as the basic design of the statute in which it reposes, limit our reading of "judicially reviewable action" to one subject to judicial review as of the time the plaintiff files suit. First, the phrase does not speak in contingent terms to encompass actions that may or may not be judicially reviewable at some point in the future. While an initial decision can convert to a final decision with either the passage of thirty-five days or the denial of all outstanding petitions for review, it can also be overturned or modified by the Board, in which case it will never be reviewable by the courts in its initial form. Furthermore, throughout the thirty-five-day period following the issuance of an initial decision, the parties can each petition for another round of review from the Board. Once a decision becomes final, however, a losing party's only recourse lies in the courts. These distinctions in the effect of the two kinds of decisions have real-world implications, and defy any gloss that an initial decision and a final decision are effectively synonymous.

Second, as sketched above, *see supra* pp. 637–39, section 7702(e)(1)(B) is situated within a larger statutory provision—section 7702—that structures the path of all mixed

cases. As a whole, section 7702 provides a rigid time line for advancing mixed cases through the various phases of administrative and judicial review set forth therein. In looking to its parallel structure, we "follow the cardinal rule that a statute is to be read as a whole," *King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)), "since the meaning of statutory language, plain or not, depends on context." *Conroy v. Aniskoff,* 507 U.S. 511, 515, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993). As in *Conroy* and "the context of this statute actually supports the conclusion that Congress meant what [section 7702(e)(1)(B) ] says." *Id.* For example, sections 7702(a)(1) and 7702(a)(2) respectively direct that the MSPB and an employee's agency—depending on where the complainant chooses first to pursue his mixed case—"shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action", 5 U.S.C. § 7702(a)(1), and "shall resolve such matter within 120 days." 5 U.S.C. § 7702(a)(2). Moreover, sections 7702(e)(1)(A) and 7702(e)(1)(C) each allow aggrieved employees to pursue their claims in federal court when either their employing agency or the EEOC has been temporally remiss in processing a case before it.[13] *See* 5 U.S.C. §§ 7702(e)(1)(A) & 7702(e)(1)(C). Read together, these provisions clearly express Congress' desire that mixed cases should be processed expeditiously, and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery.

The legislative history lends further support to our reading of section 7702(e)(1)(B). The Joint Explanatory Statement of the Committee on Conference accompanying the CSRA ("Explanatory Statement") declares that

---

**12.** At the time appellant filed her complaint in the district court, 179 days had elapsed since she lodged her mixed appeal with the MSPB. Eighty-one days more would pass before a final decision issued.

**13.** 5 U.S.C. § 7702(e)(1)(A) entitles an employee to bring suit when there is no judicially reviewa-

ble action on the 120th day following the filing of a mixed case complaint with the employing agency, while 5 U.S.C. § 7702(e)(1)(C) allows recourse to the federal courts when there is no "final agency action" on the 180th day following the filing of a petition with the EEOC.

[t]he bill establishes *mandatory* time limits to govern the maximum length of time the employing agency, the MSPB, the EEOC, or the Panel may take to resolve the matter at each step in the process. The act makes compliance with these deadlines *mandatory*—not discretionary——in order to assure the employee the right to have as expeditious a resolution of the matter as possible.

H. CONF. REP. No. 95–1717, Joint Explanatory Statement of the Committee on Conference, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 2860, 2874 (emphasis added). Describing the procedural path for processing mixed cases, the Explanatory Statement goes on to explain that

[t]he conference substitute fully protects the existing rights of employees to trial de novo under title VII of the Civil Rights Act of 1964 or other similar laws after a final agency action on the matter. Under the act's provisions, this final agency action *must* occur within 120 days after the complaint is first filed. After these 120 days, the employee may appeal to the Board or file a complaint in district court in those cases where the agency in violation of the law has not issued a final decision. If the employee files an appeal of the agency action with the MSPB, the employee may file a suit in district court any time after 120 days if the Board has not completed action on the matter by that time.

*Id.* at 2874–75. (emphasis added). We think this history reinforces our reading of the text that Congress used "judicially reviewable action" to refer to final agency actions alone. The Board has not "completed action" nor "resolve[d] the matter" until it issues a final decision. The text and structure of section 7702, as well as the accompanying legislative history, permit no other interpretation.

■ Appellee's principal support for his contrary reading lies in a separate passage in the Explanatory Statement. After discuss-

ing the mandatory nature of the time limits for agency action, the Explanatory Statement continues: "[i]t is not intended that the employing agencies, the Board, the Commission, or the special panel would automatically lose jurisdiction for failing to meet these time frames. Congress will exercise its oversight responsibilities should there be a systematic pattern of any body failing to meet these time frames." *Id.* at 2874. In appellee's view, this statement signals a clear intention to prevent complainants from entering federal court until the administrative agency takes final action, and section 7702(e)(1)(B) merely constitutes a type of savings clause that applies on those rare occasions when the agency refuses to act altogether.[14] Appellee fails to explain, however, why authorization of an agency's retention of jurisdiction after a deadline for action has passed should also divest the federal courts of the jurisdiction expressly granted by section 7702(e)(1)(B) to consider the appeal of an appellant in the same situation. The two are in no way mutually exclusive. *See Padilla v. Department of the Air Force*, 58 M.S.P.R. 561, 566 (1993) ("The appellant's filing of a civil action in a United States District Court does not automatically terminate the Board's jurisdiction over her appeal," as Board law "permits simultaneous adjudication of a mixed case appeal before the Board and a United States District Court."); *Connor v. United States Postal Serv.*, 52 M.S.P.R. 588, 591 (1992) (same); *McGovern v. Equal Employment Opportunity Comm'n*, 28 M.S.P.R. 689, 691 n. 1 (1985) ("The fact that Section 7702(e)(1)(B) allows the appellant to go to District Court if he does not have a decision within 120 days of his appeal to the regional office does not lead us to conclude that the presiding official's initial decision constitutes a final and reviewable Board order in this case. Rather, that section provides the appellant with an alternative and additional route of appeal...."). The section allows

---

14. In support of his reading, appellee also cites to sections 7701(i)(1) & (2), which direct the MSPB to announce time frames for processing appeals and to submit yearly reports to Congress discussing its adherence to these deadlines. 5 U.S.C. §§ 7701(i)(1) & (2). Neither the requirement of record-keeping nor the specter of con-

gressional oversight undercuts the alternative avenue for relief that Congress made available to plaintiffs in section 7702(e)(1)(B). In fact, these provisions reinforce our reading; they illustrate yet another mechanism for assuring the expeditious resolution of employee complaints that Congress so clearly contemplated.

the appellant to ignore the time lapse by the Board or to move the case to federal court. Accordingly, although the MSPB does not lose its jurisdiction when 120 days elapse without a final decision, the appropriate federal district court can take jurisdiction as well.

2. *Does Our Reading of Section 7702(e)(1)(B) Produce an Absurd Result?*

Appellee draws on the district court's opinion further to argue that a literal reading of section 7702(e)(1)(B) would produce absurd results. According to the court below, "[o]ne hundred and twenty days is not enough time for the Board to complete the entire cycle of initial decision and subsequent review that is necessary to render a 'final' decision." *Butler I*, at 7. Allowing a complainant to proceed to federal court after the passage of 120 days would, in appellee's view, undermine the MSPB's role as the preeminent authority on federal personnel disputes and obviate the requirement for the exhaustion of administrative remedies. We disagree.

First, the line of cases relied upon by appellee, dating back to *Holy Trinity Church v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), and continuing up through *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), sanctions departure from a statute's plain meaning only in that rare instance where a literal reading would produce an application at odds with the clearly expressed purpose of the statute. Where a " 'literal application of a statute will produce a result demonstrably at odds with the *intentions* of its drafters' . . . the *intention* of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102

S.Ct. 3245, 73 L.Ed.2d 973 (1982)) (emphasis added). We think it clear, however, for the reasons just discussed, that the plain language of section 7702(e)(1)(B) does not lead to a particular application that deviates from Congress' plain intent. To the contrary, every application of our statutory reading will accord with Congress' clearly expressed purpose. Accordingly, the principle of statutory construction expressed in *Holy Trinity* is inapposite. To the extent that section 7702(e)(1)(B) permits a complainant to proceed to federal district court without first obtaining a final decision from the MSPB, and thereby to avoid exhausting available administrative remedies, Congress intended that result.[15] *See National Treasury Employees Union v. King*, 961 F.2d 240, 243 (D.C.Cir.1992) ("Exhaustion is indeed a 'flexible doctrine,' in which congressional intent is of 'paramount importance.' ") (quoting *Patsy v. Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)).

We do not discount the special role that the MSPB has been assigned in the adjudication of federal personnel disputes, nor do we impugn its expertise. The degree of deference that federal courts must accord MSPB resolutions of nondiscrimination claims, *see* 5 U.S.C. § 7703(c) (limiting review to actions found to be arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence), speaks directly to its preeminent role in this area. We agree with our sister courts that "[a]dministrative law judges and the MSPB [and] EEO counselors and the EEOC . . . all have a measure of expertise and familiarity with employment discrimination disputes that federal judges cannot readily match." *Vinieratos v. United States Dep't of the Air Force*, 939 F.2d 762, 775 (9th Cir.1991). *See also Muller Optical Co. v. EEOC*, 743 F.2d 380, 395 (6th Cir.1984) ("the EEOC has developed considerable expertise in the field of

---

**15.** It is for this reason that cases cited by appellee like *Tolbert v. United States*, 916 F.2d 245 (5th Cir.1990) and *Rivera v. United States Postal Serv.*, 830 F.2d 1037 (9th Cir.1987), are distinguishable. In *Tolbert* and *Rivera*, the complainants appealed adverse decisions from their employing agency to the EEOC, and then filed suit before the 180 days allotted the EEOC for rendering a

final decision had passed. In other words, the plaintiffs brought suit without first pursuing their claims at the administrative level to the extent explicitly required by statute. In the present case, by contrast, appellant pursued her claim before the MSPB and waited the statutorily prescribed 120 days before bringing this lawsuit.

employment discrimination since Congress created it by the Civil Rights Act of 1964"); *cf. Hopkins v. Price Waterhouse*, 920 F.2d 967, 979 (D.C.Cir.1990) ("In explaining Congress' decision to grant the EEOC administrative enforcement powers, the Senate Committee on Labor and Public Welfare observed that ... '[t]he Equal Employment Opportunity Commission would be expected to develop an important reservoir of expertise in these matters, expertise which would not readily be available to a widespread court system.'") (quoting S.REP. No. 415, 92d Cong., 1st Sess. 18–19 (1971)). Nevertheless, where the complainant has neither deliberately abandoned the administrative regime,[16] *see Vinieratos*, 939 F.2d at 770 (plaintiff abandoned claim when he filed third EEO complaint and asked MSPB to defer to EEO process); *McGinty v. United States Dep't of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990) (plaintiff abandoned administrative system by filing claim in federal court rather than appealing agency no age discrimination finding to the EEOC), nor refused to cooperate in its processes, *see Wilson v. Pena*, 79 F.3d 154, 164 (D.C.Cir.1996) ("If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit."); *Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir.1997) (district court lacks jurisdiction over employment discrimination suit where plaintiff refused to cooperate with agency EEO investigation), and has herself followed the rigorous time limitations prescribed by section 7702, section 7702(e)(1)(B) explicitly sanctions a civil action in the federal district courts once 120 days have passed without a final decision from the MSPB.[17]

While the district court has jurisdiction over such a claim, and cannot dismiss it as untimely for failure to exhaust administrative remedies, we see no reason why the district court cannot stay the case, or hold it in abeyance, for a reasonable period of time.

*See National Treasury Employees Union*, 961 F.2d at 245 (reversing dismissal for failure to exhaust administrative remedies but directing the district court to hold claim in abeyance for three months to allow the FLRA time to hear unfair labor practice claim). Such treatment would allow the court to benefit from the exercise of MSPB expertise, preserving judicial resources while simultaneously protecting the right of appeal contained in section 7702(e)(1)(B). In this case, for example, the MSPB's final decision was issued in December of 1994, a little more than two months after appellant filed her complaint; the district court did not rule on her complaint, however, until February of 1997. While this delay may not be typical, it reveals that the district courts can routinely benefit from MSPB expertise without running afoul of the unambiguous language of section 7702(e)(1)(B), and without disadvantaging parties who follow the letter of the statute's time line.

### III.

For reasons discussed, we hold that the initial decision of an administrative judge is not a "judicially reviewable decision" for purposes of 5 U.S.C. § 7702(e)(1)(B) unless neither party, nor the MSPB on its own motion, seeks further review within thirty-five days. Accordingly, section 7702 allows a complainant like Butler to appeal her claim to the appropriate federal district court when, after filing a mixed case appeal with the MSPB, 120 days elapse without final MSPB action. Accordingly, we reverse the dismissal of appellant's claim and remand to the district court for further proceedings.

*So ordered.*

---

16. As should be evident, we conclude that a federal employee who files suit after 120 days have elapsed but before the MSPB issues a final decision has not abandoned her administrative remedies.

17. If the MSPB issues a final decision after more than 120 days have elapsed but before the complainant has brought suit, 5 U.S.C. § 7703 controls. Under section 7703(b)(2), once the party receives notice of the MSPB's final action, she has thirty days in which to file a claim in district court. *See* 5 U.S.C. § 7703(b)(2).